**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of First National Bank in West Concord, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

**No. 3–89 CIV 712.**

United States District Court,
D. Minnesota,
Third Division.

Feb. 21, 1991.

Dorsey & Whitney by Michael A. Lindsay, and Brian E. Palmer, Minneapolis, Minn., for plaintiff.

Faegre & Benson by Norman R. Carpenter, and Mark D. Savin, Minneapolis, Minn., for defendant St. Paul Fire and Marine Ins. Co.

## ORDER

ALSOP, Chief Judge.

The above entitled matter came before the court on cross-motions for summary judgment by plaintiff Federal Deposit Insurance Corporation ("FDIC") and defendant St. Paul Fire and Marine Insurance Co. ("St. Paul") on February 1, 1991, pursuant to Federal Rule of Civil Procedure 56(b).

## I. STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses which are either factually unsupported or which are based on undisputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987). Second, any dispute over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

## II. FACTUAL BACKGROUND

This case involves a suit by the FDIC as receiver of First National Bank in West Concord for a declaratory judgment against St. Paul seeking coverage under a directors' and officers' liability policy issued to the bank. This case has been consolidated with a suit by the FDIC against

former officers and directors of the bank, *FDIC v. Gary Gordinier, et al.,* 783 F.Supp. 1181 ("D & O action").

The bank was a banking institution organized and existing under the laws of the United States and doing business in Dodge County, Minnesota from 1934 until it was ordered closed by the Office of the Comptroller of the Currency ("OCC") on March 5, 1987. Because the bank was nationally chartered, the OCC was the bank's primary regulator. Pursuant to its statutory responsibilities, the OCC conducted a number of examinations of the bank and also held a number of meetings with bank representatives. By March 5, 1987, the OCC had determined that the bank was insolvent. It therefore ordered the bank to be closed and tendered to the FDIC appointment as receiver for the bank. Under 12 U.S.C. § 1821(d), the FDIC has undertaken to administer the bank's assets and affairs.

In 1983, St. Paul issued directors' and officers' liability policy number 400 GM 8116 ("D & O policy"), a policy that provided insurance for claims made against the bank's officers and directors. The policy period ran from April 5, 1983 to April 5, 1986. St. Paul also issued a bankers' blanket bond in favor of the bank. The bond, however, is not directly at issue in this case.

The D & O policy contains the following provisions:

I. COVERAGE

This policy shall, subject to its terms, conditions and limitations, pay on behalf of: ...

b. DIRECTORS' AND OFFICERS' LIABILITY—the Insured (as defined in Insuring Agreement II B 2) because of any claim(s) made against them jointly or severally, for "Loss" (as defined in Condition I B) and caused by any negligent act, any error, any omission, or any breach of duty while acting in their capacities as Directors or Officers or any matter claimed against them solely by reason of their being Directors or Officers.

\* \* \* \* \* \*

III. POLICY PERIOD

This policy applies to any negligent act, any error, any omission, or any breach of duty which occurs:

(1) during the policy period, and then only if claim is made or suit is brought during the policy period. If, during the policy period, the Insured shall have any knowledge or become aware of any negligent act, any error, any omission, or any breach of duty and shall, during the policy period, given written notice thereof to the Company, then such notice shall be considered a claim hereunder; ...

\* \* \* \* \* \*

CONDITIONS ...

7. Notice of Claim or Suit. In the event of any occurrence likely to involve the indemnity provided under this Policy, written notice shall be given by or on behalf of the Insured to the company or any of its authorized agents as soon as practicable....

In March, 1986, the bank's president and the chairman of the bank's board of directors sent a renewal application to St. Paul. This renewal application included an acknowledgement by the bank that during the last two years an officer or director had been alerted to the fact that: (1) there were extensions of credit exceeding the legal lending limit by the bank; (2) that there were assets subject to classification as substandard, doubtful or lost, wherein the total of such assets exceed 25 percent of capital; and (3) that there were significant violations of laws and regulations. The application also provided details as to the current status of these conditions. It stated, "six credit overlines; 1 now paid out in full, 3 are farm credits that FHA guarantees fell through on, 2 other overlines are commercial loans." In addition, the application stated that the bank had been asked to sign a cease and desist order by the OCC, but the bank had not signed the order and had not since that time received any comment from the OCC.

Following receipt of the application, St. Paul's field supervisor responsible for the

bank, Joseph Eichten, met with bank president Gary Gordinier in person at the bank's offices in West Concord. At that meeting, Gordinier disclosed to Eichten the nature of the OCC's regulatory concerns. In particular, he told Eichten that the examiners were upset with extensions of credit outside of the bank's trade territory.

After Eichten completed his investigation, he concluded that he had major items of concern about the bank management. Therefore, he recommended that St. Paul not renew the policy. Eichten's supervisors reviewed the facts he had uncovered through the renewal process, and evaluated this information and Eichten's recommendation. After reviewing this information, St. Paul in fact declined to renew the policy.

Following the bank's closure, the FDIC commenced the D & O action against some of the bank's individual directors and officers. This action was based on misconduct of the directors and officers that allegedly occurred within the policy period of the D & O policy. Specifically, the complaint in the D & O action alleges that the officers and directors were negligent in the performance of their duties; it contends that the officers and directors negligently approved loans in excess of legal lending limits, approved problematic loans to insiders, and made loans beyond the bank's normal lending territory.

In the present motion, the FDIC asks the court to find as a matter of law that the D & O policy issued by St. Paul covers all of these alleged negligent acts by the officers and directors of the bank. In addition, the FDIC asks that the court grant partial summary judgment on St. Paul's defenses that the FDIC must proceed against the defaulting debtors rather than the insurer, and that the OCC was negligent in performance of its regulatory duties. St. Paul, in turn, moves this court for summary judgment and asks it to find as a matter of law that the D & O policy at issue does not provide coverage for the alleged negligent acts of the directors and officers of the bank in question.

## III. ANALYSIS

The D & O policy issued by St. Paul provides coverage for any negligent act, any error, any omission, or any breach of duty that occurs during the policy period, provided a claim is made or suit is brought against the insured during the policy period. Under section III(1) of the policy, if the insured gives written notice to the insurer of any negligent act, any error, any omission, or any breach of duty during the policy period, it is considered a claim under the policy.

As to the coverage issue, the FDIC does not contend that a suit was brought against the insured during the policy period. It does argue, however, that the renewal application, coupled with information St. Paul obtained during its subsequent investigation, constituted notice of a negligent act, an error, an omission, or a breach of duty and therefore was a "claim" under section III(1). Therefore, it maintains that as the information in the renewal application and St. Paul's investigation occurred during the policy period, there is coverage under the policy for any losses that can be traced to the negligent acts St. Paul was aware of as a result of the renewal policy and its investigation. Apparently the FDIC would argue that notice under the policy includes not only written notice of specific covered events, but also actual or constructive notice on St. Paul's part.

The court finds, however, that a plain reading of the policy requires that the notice tendered to St. Paul be in writing. As noted earlier, a claim under the policy can include any negligent act, any error, any omission, or any breach of duty provided the insured gives *written* notice to the insurer. The policy does not provide that the insurer's constructive or actual notice of an act or omission will be considered a claim under the policy. Therefore, coverage under the policy for potential claims extends only to acts that St. Paul received written notice of during the policy period. The renewal application submitted by the insured set forth specific information as to acts that may be found to be negligent under the D & O policy in effect. These

acts include: (1) extensions of credit exceeding the legal lending limit by the bank; (2) the fact that there were assets subject to classification as substandard, doubtful, or lost, wherein the total of such assets exceeded 25 percent of capital; and (3) the fact that there were significant violations of laws and regulations. The application also provided details as to the current status of these conditions. It stated, "six credit overlines; 1 now paid in full, 3 are farm credits that FHA guarantees fell through on, 2 other overlines are commercial loans." As a matter of law, the court finds that this information constituted "written notice" under the D & O policy issued by St. Paul. Therefore, the court finds that there is coverage under the policy for any losses that the FDIC can prove resulted directly from these particular acts.

▮ The renewal application also stated that the bank had been asked to sign a cease and desist order by the OCC. The application did not disclose the contents of the cease and desist order; it did not set forth any specific acts that the OCC was concerned about. In addition, the insured never provided St. Paul with a copy of this cease and desist order. Thus, the mere mention of an outstanding cease and desist order did not constitute "written notice" of negligent acts under the policy. Additionally, through St. Paul's subsequent investigation it learned of potential negligent acts set forth in the cease and desist order. However, St. Paul never received a copy of the order and never received any information in writing as to the specifics of that order. Therefore, as no written notice was received or was given to St. Paul, the court finds that there is no coverage under the policy for negligent acts later discovered by St. Paul.

Therefore, the court will grant the FDIC's motion for summary judgment so as to provide coverage for damage directly caused by those events specifically described in the renewal policy, and will grant St. Paul's motion for summary judgment as to coverage for all other events.

▮ St. Paul would contend that section 7 of the policy, which provides that the insured must give written notice to the insurer in the event of any occurrence likely to involve the indemnity provision under the policy, is a limitation on coverage in the policy. This term, however, does not define the scope of the policy's coverage. Rather, it is a notice provision, designed to afford the insurer the opportunity to investigate the claim. Under Minnesota law, failure to satisfy such notice requirements will defeat liability only where the insurer is able to show actual prejudice due to the failure to give notice. *Reliance Ins. Co. v. St. Paul Ins. Cos.*, 239 N.W.2d 922, 925 (Minn.1976). In the present case, the written notice of negligent acts delineated above also suffices as notice under the language of paragraph 7. The court therefore finds that section 7 of the policy does not preclude the FDIC from recovering from St. Paul for the insured's alleged negligent acts.

The FDIC also moves for partial summary judgment as to St. Paul's defenses that the FDIC must proceed against the defaulting debtors rather than the insurer, and that the OCC was negligent in performance of its regulatory duties. At the hearing on this matter, St. Paul represented that it would be presenting no such defenses in the case at hand. Therefore, the court will grant the FDIC's motion for partial summary judgment as to this matter.

Accordingly, upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED That:

1. Plaintiff Federal Deposit Insurance Corporation's motion for summary judgment as to coverage under the D & O policy is GRANTED in part;

2. Plaintiff's motion for summary judgment as to St. Paul Fire and Marine Insurance Company's defenses is GRANTED; and

3. St. Paul's motion for summary judgment denying coverage is GRANTED in part.