A99A0050. SCHWARTZ v. HARRIS WASTE MANAGEMENT GROUP, INC.
(516 SE2d 371)

BARNES, Judge.
Hanspeter Schwartz sued Harris Waste Management Group, Inc. ("Harris Waste"), asserting that Harris Waste breached his employment contract by failing to pay him a bonus when the company was sold and failing to award him severance pay when he was terminated. Harris Waste denied owing Schwartz anything and moved for summary judgment. The trial court granted the motion in part, finding that the conditions under which Harris Waste would

owe severance or bonus pay to Schwartz under the parties' employment contract had not occurred. The court further denied the motion in part, finding that a question of fact remained as to whether Schwartz was entitled to severance pay under the company's general severance policy. Schwartz appealed the partial summary judgment to Harris Waste. For the reasons that follow, we affirm.

Harris Waste manufactured equipment for use in the waste recycling industry. In December 1994, Hanspeter Schwartz became president of Harris Waste, which at that time was a wholly owned subsidiary of AMDURA Corporation. A December 16, 1994 letter from AMDURA's Chief Operating Officer to Schwartz forms the heart of the dispute here. Harris Waste asserts that the letter is an enforceable employment contract; Schwartz contends the letter is only evidence of an oral contract between the parties, which contained more inclusive terms than the letter did.

The letter begins, "Dear Pete: I am pleased to confirm the terms of your employment with Harris Waste Management Group, Inc." Following are descriptive paragraphs with headings, identifying Schwartz's title, start date, salary, primary location, benefits, stock options, relocation benefits, "other," and supplemental severance agreement. We are concerned with the last two descriptions, which read as follows:

| | |
|---|---|
| Other | AMDURA's strategic decision is to divest the Harris division through either the sale of Harris assets or the sale of the stock of Harris Waste Management Group, Inc. from AMDURA to a third party. Upon the consummation of such a transaction, you will be paid a one-time bonus of $75,000. ["bonus paragraph"] |
| Supplemental Severance Agreement | If after the sale of Harris, your employment is terminated, other than for cause, you will be entitled to a supplemental severance payment of $150,000, payable in a lump-sum within 30 days after the date of termination. ["supplemental severance paragraph"] |

A few months after Schwartz assumed the presidency of Harris Waste, ADU Acquisition, Inc. purchased all of AMDURA's stock. AMDURA survived as a corporation, and Harris Waste remained a wholly owned subsidiary of AMDURA. A month later, Harris Waste fired Schwartz, who then sought a $75,000 bonus and $150,000 in

severance pay. Harris Waste declined to pay either sum because it did not divest from AMDURA to a third party as specified in the December 16, 1994 letter.

The trial court granted partial summary judgment to Harris Waste on Schwartz's claim for the bonus and severance pay under the December 16, 1994 letter because the letter clearly and unambiguously defined the terms under which Schwartz was entitled to those sums. Those terms were not met, the trial court held, as Schwartz admitted in his complaint that Harris Waste still remained a subsidiary of AMDURA and did not sell its stock or assets to a third party. The trial court thus declined to consider Schwartz's parol evidence explaining that "sale" also meant a change in control of Harris Waste.

Schwartz appealed, enumerating as errors the trial court's ruling that the December letter constituted an integrated contract; that the letter was unambiguous and could not be explained by parol evidence; that parol evidence was inadmissible; and that evidence of the parties' intent did not create a question of fact defeating summary judgment.

Under OCGA § 9-11-56 (c), summary judgment should be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review de novo a grant of summary judgment, viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

1. The threshold issue is whether the December 16, 1994 letter constitutes a contract between the parties. Schwartz argues that it is not a contract, but rather "a letter evidencing an oral agreement between Schwartz" and Harris Waste that did not contain all the terms of Schwartz's employment. He contends that the terms set forth in the letter are not as expansive as the parties intended them to be.

In support of this argument, Schwartz cites *Pope & Fleming v. Graniteville Mfg. Co.*, 1 Ga. App. 176 (57 SE 949) (1907), for the proposition that a letter confirming an oral agreement is not a contract. Harris Waste responds that *Pope* stands for the proposition that, unlike this case, the letter at issue was not a contract but merely an offer. The December 16, 1994, letter in this case, Harris Waste argues, is a contract for additional compensation that Schwartz accepted by continuing his employment after its receipt.

*Pope* held that an oral agreement containing mutual promises was enforceable, and that a subsequent written letter did not merge but was merely an offer because neither party performed under its terms. Id. at 184. The issue before us is similar, involving both an oral agreement and a subsequent written letter. The first issue is whether the written letter was even a contract. If it is, the next issue

is whether the antecedent oral agreement merged into the subsequent written contract.

Both parties here performed under the terms of the written letter. Schwartz performed the job as Harris Waste's president, and Harris Waste paid him a salary. Therefore, the written letter constitutes a contract between the parties.

The next issue is whether the antecedent oral agreement merged into the written contract, the letter of December 16, 1994.

> The test to determine whether the oral agreement is one which the law will permit to be [pled] and proved is whether the oral agreement constitutes a part of the written contract or whether, instead, it is a separate and distinct, oral contract which is not inconsistent with the written contract. If the latter, it admits of pleading and proof.

*S & S Builders v. Equitable Investment Corp.*, 219 Ga. 557, 561 (2) (134 SE2d 777) (1964).

Schwartz argues that the letter merely includes *some* of the terms of the oral contract, in which he and Harris Waste's representative agreed that he should receive a bonus and severance if the company underwent a change of control. Assuming that the parties entered into an oral contract as Schwartz describes, and keeping in mind that we have already determined that the letter constitutes a contract, the issue before us is whether the oral contract merged into the letter. To decide that issue, we must determine whether the terms of the oral contract contradict or vary from the terms of the letter. If they do contradict the written contract, then the oral agreement merges and the written contract prevails. *Vulcan Materials Co. v. Douglas*, 131 Ga. App. 21 (1) (205 SE2d 84) (1974).

The written contract between Schwartz and Harris Waste defines precisely the terms under which a "sale" of the company will take place: by divesting "the Harris division through either the sale of Harris assets or the sale of the stock of Harris Waste Management Group, Inc., from AMDURA to a third party." Schwartz's argument that the oral agreement included an understanding that any change in the control of Harris would trigger his bonus and severance pay varies the terms set forth in the written contract. Therefore, we conclude that the oral agreement merged into the written letter. Compare *Brannen/Goddard Co. v. Collin Equities*, 227 Ga. App. 352, 354 (489 SE2d 106) (1997) (no merger because oral contract to pay monthly rental percentage was not inconsistent with written contract to pay lump rental percentage); *Diamondhead Corp. v. Robinson*, 144 Ga. App. 60, 62 (240 SE2d 572) (1977) (no merger because oral agreement to pay additional sums for good performance did not

contradict written employment contract).

Here, Schwartz testified in deposition that the letter reflected his understanding of the agreement he reached with Harris Waste's representative. When asked whether he understood that the letter contained the terms and conditions of his employment, he answered yes. When further asked if he knew of "anything else that wasn't included" in the letter, he responded, "At that time, no." Finally, he admitted that the parties never contemplated the sale of AMDURA as a whole when he took the position of president. We find that the trial court did not err in concluding that the December 16, 1994 letter constitutes a valid contract, and that the antecedent oral agreement merged into the written letter.

2. Schwartz's remaining enumerations of error address the question of whether the December 16, 1994 letter is an ambiguous contract whose terms can be explained or amplified by parol evidence.

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. [Cit.]

*CareAmerica v. Southern Care Corp.*, 229 Ga. App. 878, 880 (1) (494 SE2d 720) (1997).

The trial court found that the definition of sale within the contract is unambiguous, as it preconditions the payments on the condition that AMDURA "divest the Harris division through either the sale of Harris assets or the sale of stock of Harris Waste Management Group, Inc., from AMDURA to a third party." We agree with the trial court that this language clearly states that a sale must take place, identifies what must be sold and identifies the party to which the sale must be made. The parties agreed that Harris Waste still remained a subsidiary of AMDURA and did not sell its stock or assets to a third party. Thus the trial court did not err in finding that the definition of "sale" in the contract is unambiguous and that the condition precedent to the bonus and severance payments did not occur.

Schwartz argues that the second reference to "sale" in the December 16, 1994 letter, contained in the supplemental severance

paragraph, did not encompass the explicit definition of "sale" in the preceding bonus payment paragraph. He argues that the dictionary definition of the word "sale" includes a change in control, as happened with Harris Waste when ADU purchased AMDURA's assets. Thus the term is ambiguous and its meaning should be resolved by a jury, Schwartz contends.

We do not find this argument persuasive. First, Schwartz admitted in his deposition that "sale of Harris" in the second supplemental severance paragraph means the same thing as "sale of Harris" in the first bonus paragraph.

Second, under general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive. *Central Ga. Elec. &c. Corp. v. Ga. Power Co.*, 217 Ga. 171, 173-174 (121 SE2d 644) (1961).

> The whole contract must be looked to in arriving at the construction of any part. . . . It does not follow that merely because there are two possible interpretations which might be employed in construing a contract the matter automatically becomes a question for the jury. If that were true the court would rarely, if ever, construe a contract as OCGA § 13-2-1 declares its duty to be. The role and function of a court [are] higher than that of a mere referee.

(Citations and punctuation omitted.) *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635, 637 (1) (344 SE2d 430) (1986).

Here, the employer specifically outlined both its purpose ("AMDURA's strategic decision is to divest the Harris division") and the conditions under which the bonus payment would become due (upon "either the sale of Harris assets or the sale of the stock of Harris Waste Management Group, Inc. from AMDURA to a third party"). We hold that the trial court did not err in concluding that the highly specific description of "sale" in the bonus paragraph also applies to the word "sale" in the subsequent severance payment paragraph.

*Judgment affirmed. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 14, 1999.

*Powell, Goldstein, Frazer & Murphy, Jerry B. Blackstock, John W. Harbin, Carrie A. Hanlon*, for appellant.

*Robins, Kaplan, Miller & Ciresi, Lisa L. Heller, Thomas J. Gallo, Marla R. Butler,* for appellee.