## A03A0679. WOODY'S STEAKS, LLC v. PASTORIA.
### (584 SE2d 41)

BARNES, Judge.

Woody's Steaks, LLC sued David Pastoria for breach of a commercial lease and licensing agreement. Pastoria answered, denying that he breached the contracts. Both parties moved for summary judgment, which the trial court initially denied. The court certified its order for immediate review, but this court denied the LLC's application for interlocutory review. Following additional discovery, both parties again moved for summary judgment. This time the trial court granted Pastoria's motion and denied the LLC's motion, and the LLC appealed. We agree with the trial court's analysis of the contract issues in this case, and therefore affirm its judgment.

Pastoria has owned and operated a sandwich shop across from Grady High School stadium in Atlanta since 1975. On August 14, 2001, Pastoria and the LLC signed a commercial lease agreement and a license agreement, under which the LLC would begin to operate the business on September 4, 2001. The parties agree that on September 4, two LLC agents came to the store before opening time and began working. Before the store opened at 11:00 a.m., however, Pastoria asked them for proof that the LLC had acquired the business license, food service permit, sales tax certificate, workers' compensation coverage, and premises liability insurance required by the lease and by local and county ordinances. When the agents could not provide proof that the LLC had met these requirements, Pastoria

refused to allow them to open the business that day. Pastoria subsequently declared the lease in default and returned the LLC's deposit.

The LLC sued Pastoria for breach of contract; Pastoria answered and denied liability. Pastoria argued in his first motion for summary judgment that the LLC's failure to obtain the documents necessary to legally open the business constituted a material breach that prevented it from enforcing the contract. In its cross-motion for summary judgment, the LLC argued that Pastoria failed to give notice of these breaches and an opportunity to cure them, as required under the contract. The trial court denied both motions, finding a question of fact regarding whether the LLC had "opened for business" on September 4, 2001.

After additional discovery, the LLC again moved for summary judgment, contending that the deposition testimony of both Pastoria and his long-time employee established that LLC agents had opened the store the day the lease was to begin. Pastoria responded and also moved for summary judgment, arguing that, in context, those depositions established that the LLC did not open the restaurant and that the LLC failed to fulfill the contract's condition precedent of obtaining the necessary licenses, permits, and insurance to operate the business. In granting summary judgment to Pastoria, the trial court analyzed the lease contract and the evidence both parties presented in support of their motions.

Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

The issue in this case involves the construction of the contract. The LLC argues that the trial court erred in holding that Pastoria was not required to give the LLC written notice of default and an opportunity to cure, that the LLC failed to satisfy conditions precedent in the contract, and that Pastoria had a right to unilaterally terminate the license agreement.

1. In this State,

> [t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)

*Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). The existence or nonexistence of an ambiguity is a question of law for the court. *Southeast Atlantic Cargo Operators v. First State Ins. Co.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. Id.

In this case, the lease contains two separate provisions that address the issue of default, both contained in paragraph 20 of the "Special Stipulations" portion of the lease. The relevant provisions are:

> [I]f Tenant defaults in fulfilling any of the other covenants of this Lease, or upon its failure to perform any of the other terms of this Lease to be observed and performed by Tenant, . . . then if such default or event . . . shall continue for fifteen days after Landlord shall have given to Tenant a written notice specifying the nature of such default or event, then . . . (if the Lease Term shall not have commenced) Landlord shall have the right, at its option, to cancel this Lease by written notice to Tenant.

> . . .

> [O]r if Tenant shall fail to open for business on the commencement of the Lease Term, then . . . Landlord may without notice terminate this Lease, re-enter the Premises either by force or otherwise, and by summary proceedings or otherwise, dispossess Tenant and the legal representative of Tenant or other occupant of the Premises, and remove their

effects and hold the premises as if this Lease had not been made.

As the trial court noted, the LLC has conceded that it did not have the licenses, permits, and insurance it needed to operate the business legally on September 4, 2001, and therefore was in default under the lease. The LLC argues, however, that it had "opened for business" and therefore was entitled to notice and an opportunity to cure the default, which Pastoria never provided.

Because the contract is ambiguous regarding whether notice and an opportunity to cure are required every time the tenant is in default, the trial court properly proceeded to look to the rules of contract construction to resolve the ambiguity. *Schwartz v. Harris Waste Mgmt. Group,* supra, 237 Ga. App. at 660. Pursuant to the directive of OCGA § 13-2-2 (4), we favor a construction that upholds the contract "in whole and in every part," and look at the whole contract in construing any part. *Deep Six v. Abernathy,* 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000). "If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." OCGA § 13-2-2 (5). Finally, when a provision specifically addresses the issue in question, it prevails over any conflicting general language. *Deep Six v. Abernathy,* supra, 246 Ga. App. at 74.

The LLC drafted this lease, and was undertaking the obligation to operate the business, and therefore the construction that goes most strongly against it is preferred. Further, the lease provision referring specifically to a failure to open for business prevails over the more general provision referring to a breach of "any of the other covenants." Therefore, if the LLC failed to open for business on the commencement of the lease term, then Pastoria was within his rights to "without notice terminate this Lease, re-enter the Premises either by force or otherwise, and by summary proceedings or otherwise, dispossess Tenant and . . . hold the premises as if this Lease had not been made."

While agents of the LLC were present on September 4, 2001, before the restaurant opened, Pastoria would not let them open the restaurant to serve customers because they did not have the permits, certificates, or insurance required to operate the business legally. They did not open for business at the commencement of the lease term, and therefore Pastoria was entitled to terminate the lease without notice. While the LLC argues that it is unfair to give Pastoria the unilateral ability to terminate the lease by refusing to let it open the restaurant and thus causing it to be in default, Pastoria did not act unilaterally. He acted in response to the LLC's failure to obtain the permits, certificates, and insurance necessary to operate

the restaurant legally. If the LLC had obtained the necessary documents and then Pastoria had refused to allow it to open the restaurant, the situation would be entirely different.

Accordingly, the trial court did not err in concluding that the LLC breached the lease agreement, in granting summary judgment to Pastoria, and in denying summary judgment to the LLC.

2. The LLC argues that the trial court erred in finding that the lease agreement contained conditions precedent that it failed to fulfill, and argues that Pastoria failed to raise the affirmative defense in his answer as required by OCGA § 9-11-9 (c).

The three conditions that the LLC failed to fulfill are the requirement that it "maintain comprehensive general liability insurance at tenant's expense over the life of the lease agreement," that it provide evidence of this insurance to Pastoria before the commencement of the term of this lease, and that it "comply promptly with all requirements of any legally constituted public authority made necessary by reason of Tenant's occupancy and use of the Premises." The LLC argues that none of these provisions contain any words of condition indicating the parties' intent to make these provisions conditions precedent.

"A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." OCGA § 13-3-4. "Forfeiture of a lease by acts of a party to a lease because of a breach of a covenant or condition [is] not favored, but where there is an express provision in the contract, termination or forfeiture of the lease will be permitted. [Cit.]" *C & A Land Co. v. Rudolf Investment Corp.*, 163 Ga. App. 832, 833 (296 SE2d 149) (1982). Requiring the maintenance of liability insurance constitutes a condition precedent in a lease agreement, as does requiring compliance with governmental regulations. See *Rowe v. Ben's Truck Stop*, 197 Ga. App. 514, 515 (1) (398 SE2d 760) (1990).

Further, while the LLC argues that Pastoria failed to assert in his answer the affirmative defense of failure to fulfill conditions precedent, as required by OCGA § 9-11-9 (c), in his response to the LLC's petition for a temporary restraining order Pastoria specifically discussed the LLC's failure to fulfill the lease requirements that it maintain general liability insurance and comply with governmental regulations including obtaining a business license, food service permit, sales tax certificate, and workers' compensation coverage. This response was filed with Pastoria's verified answer. Both parties argued this issue before the trial court.

> The liberal rules of notice pleading found in the [Civil Practice Act] are to be applied to defendants as well as plaintiffs. [Cit.] To hold otherwise would be to speak with a forked

tongue. This is not to say that a complainant or defendant cannot demand that the opposing party comply with special provisions of the CPA requiring specificity. But the demand must be timely. The important thing to remember is that under the CPA a party is to be given notice and the opportunity to amend defective pleadings where such notice will facilitate decision on the merits. The CPA does not penalize a party irrevocably for one misstep in pleading.

*McDonough Constr. Co. v. McLendon Elec. Co.*, 242 Ga. 510, 515 (250 SE2d 424) (1978). We find no error.

3. The LLC contends that the trial court erred in finding as a matter of law that Pastoria "had the right to unilaterally terminate the License Agreement." The license agreement, signed contemporaneously with the lease agreement, provided that it was made "for the purpose of [the LLC's] operation of Woody's restaurants," and for $10 consideration gave the LLC the exclusive right to use "the trade name, trademark and business ideas of Woody's restaurants at the existing location" for five years with two five-year option periods. The contract further provided that it could only be modified by written agreement, that it was "not subject to revocations by [Pastoria] during it [sic] terms, but [the LLC] shall have the right to end the agreement by written notice to [Pastoria] of its intention hereto."

While the LLC argues that the trial court failed to address the license agreement, which is a separate contract unrelated to the lease, if the LLC cannot operate the restaurant at the "existing location," then the license agreement is not enforceable. The parties and the trial court throughout this litigation have addressed both contracts as working together. In its complaint, the LLC contended that Pastoria breached both contracts, and in its first motion for summary judgment it argued that the license agreement provided that Pastoria would assist the restaurant operations for 90 days after the agreement commenced on September 4, 2001. Pastoria argued in his first motion for summary judgment that the LLC's failure to comply with the lease constituted a material breach of both agreements.

In the trial court's first order denying summary judgment to either party, it noted that the parties had signed two agreements regarding Pastoria's restaurant, and that Pastoria agreed to lease the restaurant and license the name for the purpose of operating a restaurant. Finally, in the LLC's second motion for summary judgment, it sought summary judgment against Pastoria for "breach of contract over the operation of a sandwich restaurant."

Based on the foregoing, we find no error in the trial court's grant of summary judgment to Pastoria regarding the license agreement.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 19, 2003.

*Meadows, Ichter & Trigg, Thomas J. Archer, David G. Michell, Lloyd N. Bell*, for appellant.
*Joseph D. Buccellato*, for appellee.