**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2015**

# In the Court of Appeals of Georgia

A15A0926. AUTO-OWNERS INSURANCE CO. v. NEISLER.

DILLARD, Judge.

Auto-Owners Insurance Company ("Auto-Owners") appeals from the trial court's denial of its motion for summary judgment and grant of summary judgment to Jason Neisler on his complaint to recover funds under a dwelling policy that he holds with Auto-Owners. Auto-Owners contends that the trial court erred in (1) ruling that Neisler's policy covered his claim for certain alleged property damage and loss of rents, and (2) refusing to hold that Neisler's claim for bad-faith penalties under OCGA § 33-4-6 fails as a matter of law. For the reasons set forth *infra*, we affirm in part and reverse in part.

Viewed in the light most favorable to Auto-Owners (*i.e.*, the nonmovant),[1] the record reflects that Neisler owns a single-family home on Langston Avenue in Atlanta. The home is one of 37 residential properties that Neisler owns and uses as a rental home. He purchased the property in question on April 24, 2013, and had it insured through Auto-Owners. On May 20, 2013, before Neisler could find a tenant for the property, it was vandalized by burglars.

During the burglary, the perpetrators removed the property's water heater, the outside condensing unit, the inside air handler and furnace, and electrical wiring. It is undisputed that Neisler's policy does not cover the cost of the items that were stolen from the property, but Neisler filed a claim with Auto-Owners seeking to recover on the damage caused by the removal of these items, and Auto-Owners issued payment on what it believed was covered by Neisler's policy. Neisler refused to cash the check because he disagreed with Auto-Owners about the extent of his coverage under the policy. Specifically, Neisler took issue with Auto-Owners's refusal to pay

---

[1] *See, e.g.*, *Blake v. KES, Inc.*, 329 Ga. App. 742, 742 (766 SE2d 138) (2014) ("On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (punctuation omitted)).

for the labor cost associated with replacing the items stolen by the burglars, and for his alleged loss of rent.

Neisler's policy with Auto-Owners provided, in relevant part, that the dwelling was covered in the event of "[v]andalism or malicious mischief." However, the coverage for "vandalism or malicious mischief" explicitly excluded, *inter alia*, "loss[ ] . . . by theft, burglary or larceny." Nevertheless, the policy separately provided coverage for "[d]amage by burglars to the dwelling or other structures at the described premises." However, the coverage for "damage by burglars" explicitly excluded "any property taken by burglars." Finally, the policy also provided that

> [i]f a covered loss makes the described premises unfit to live in, we will pay for your loss of normal rents resulting from such covered loss while the described premises is unfit to live in. We will not pay charges and expenses which do not continue during that time. We will pay this loss of normal rents only for the shortest time needed to make the rented part fit to live in.

The parties continued to disagree as to whether, under these provisions, Neisler was entitled to recover the cost of labor to replace the fixtures that were stolen from the dwelling (though not the cost of the replacement fixtures themselves) and the cost of lost monthly rent when he had no tenant at the time of the burglary. Thus, Neisler

3

filed suit against Auto-Owners, and both parties eventually filed motions for summary judgment. The trial court thereafter denied Auto-Owners's motion, but granted Neisler's motion for partial summary judgment, determining that the policy's provisions for coverage and exclusions related to burglary and its coverage of "normal rent" were ambiguous. But construing the provisions in Neisler's favor, it determined that Neisler was owed the cost of damage by the removal of the stolen property and the cost to replace it, and that he was owed rent for the period in which the property was uninhabitable. Nevertheless, the court determined that there was a genuine issue of material fact as to whether Auto-Owners had acted in bad faith by refusing to pay these damages. Thus, the court denied Auto-Owners's motion and granted Neisler's motion for partial summary judgment. This appeal by Auto-Owners follows.

1. *Coverage under the policy.*

First, Auto-Owners argues that the trial court erred in finding that Neisler could recover for the cost of labor to replace the fixtures that were stolen from the dwelling and that he could recover "normal rent" when the dwelling had no tenant at the time of the loss. Although we agree with the trial court that the relevant policy provisions

are ambiguous as to coverage for vandalism (and therefore Neisler is entitled to recover for his property damage), we disagree that he is entitled to recover lost rent.

At the outset, we note that insurance in Georgia is a matter of contract, and this Court has long held that such contract disputes are "well suited for adjudication by summary judgment because construction of a contract is ordinarily a matter of law for the court."[2] And in construing a contract, we must first decide "whether the language is clear and unambiguous."[3] Of course, under Georgia law, an insurance company is "free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others."[4] And as is true with *all* contracts, "unambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether

---

[2] *Maxum Indem. Co. v. Jimenez*, 318 Ga. App. 669, 669 (734 SE2d 499) (2012) (punctuation omitted); *accord Club Libra, Inc. v. R.L. King Props., LLC*, 324 Ga. App. 547, 547-48 (1) (751 SE2d 418) (2013); *see also Michna v. Blue Cross & Blue Shield of Ga., Inc.*, 288 Ga. App. 112, 113 (653 SE2d 377) (2007) (noting that contract construction is a matter of law for the court); *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999) (same).

[3] *Michna*, 288 Ga. App. at 113 (punctuation omitted); *accord Schwartz*, 237 Ga. App. at 660 (2).

[4] *Payne v. Twiggs Cty. Sch. Dist.*, 269 Ga. 361, 363 (2) (496 SE2d 690) (1998); *accord Sorema N. Am. Reinsurance Co. v. Johnson*, 258 Ga. App. 304, 306 (574 SE2d 377) (2002).

5

they might be of benefit to the insurer, or be of detriment to an insured."[5] Thus, if the language is unambiguous, the court "simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning."[6]

But if a contract *is* ambiguous, "the court must apply the rules of contract construction to resolve the ambiguity."[7] And contractual provisions are ambiguous when they are "susceptible to more than one meaning, even if each meaning is logical and reasonable."[8] Indeed, a contract is ambiguous if the words "leave the intent of the parties in question—i.e., the intent is uncertain, unclear, or is open to various interpretations."[9]

---

[5] *Payne*, 269 Ga. at 363 (2); *accord Sorema N. Am. Reinsurance Co.*, 258 Ga. App. at 306; *see also Grange Mut. Cas. Co. v. DeMoonie*, 227 Ga. App. 812, 814 (3) (a) (490 SE2d 451) (1997) ("Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." (punctuation omitted)).

[6] *Michna*, 288 Ga. App. at 113 (punctuation omitted); *accord Schwartz*, 237 Ga. App. at 660 (2).

[7] *Michna*, 288 Ga. App. at 113 (punctuation omitted); *accord Schwartz*, 237 Ga. App. at 660 (2); *see also* OCGA § 13-2-2.

[8] *Michna*, 288 Ga. App. at 113; *see also Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996).

[9] *Citrus Tower Blvd. Imaging Ctr., LLC v. Owens, MD, PC*, 325 Ga. App. 1, 8 (2) (752 SE2d 74) (2013).

In cases of ambiguity, there are three well-known rules of contract construction that apply: (1) ambiguities are strictly construed against the insurer as the drafter; (2) exclusions from coverage the insurer seeks to invoke are strictly construed; and (3) the contract is to be read in accordance with the reasonable expectations of the insured when possible.[10] Indeed, when a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, "such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured."[11] Furthermore, exceptions and exclusions to coverage must be "narrowly and strictly construed against the insurer and [forgivingly] construed in favor of the insured to afford coverage."[12]

---

[10] *Lambert v. ALFA Gen. Ins. Corp.*, 291 Ga. App. 57, 59 (660 SE2 889) (2008); *see also* OCGA § 13-2-2.

[11] *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (548 SE2d 67) (2001); *accord Mason v. Allstate Ins. Co.*, 298 Ga. App. 308, 311 (1) (a) (680 SE2d 168) (2009); *see* OCGA § 13-2-2 (5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred . . . .").

[12] *Meyers*, 249 Ga. App. at 324; *see also Blue Cross & Blue Shield of Ga., Inc. v. Shirley*, 305 Ga. App. 434, 437 (1) (699 SE2d 616) (2010) ("[E]ven though ambiguous exclusions may be construed [forgivingly] in favor of the insured and strictly construed against the insurer, this cannot be done when the exclusion is clear and unequivocal." (punctuation omitted)).

Finally, only if the contract is still ambiguous after applying the rules of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by the jury."[13] With these guiding principles in mind, we turn now to the policy provisions at issue in the case *sub judice*.

a. *Coverage for damages related to burglary.*

As set forth *infra*, the "vandalism and malicious mischief" provision excludes from coverage losses from, *inter alia*, theft and burglary. Nevertheless, the policy separately *covers* "damage by burglars to the dwelling or other structures," though not any property actually taken by burglars. And, importantly, this latter provision does not limit the coverage to damage caused when burglars enter or exit the building.[14]

---

[13] *Michna*, 288 Ga. App. at 113 (punctuation omitted); *accord Schwartz*, 237 Ga. App. at 660 (2).

[14] *Cf. Summit Bank & Trust v. Am. Modern Home Ins. Co.*, Civil Action No. 12-cv-02395-JLK, 2014 WL 3512770, at *2 (III) (D. Colo. 2014) (holding that removal of copper piping and conduit, among other things, was not covered by insurance policy when policy covered vandalism or malicious mischief but excluded coverage for loss "by pilferage, theft, burglary or larceny, except . . . for willful damage to the building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the building(s)"). *See generally* Morley Witus, *The Paradox of Insurance Coverage for Vandalism but Not Theft*, 56 WAYNE L. REV. 1747, 1759 (III) (2010) (discussing the "decades of litigation" over insurance provisions covering vandalism but not theft and noting that some courts have "tried to give effect both to the vandalism coverage and the theft exclusion by holding that the building damage is covered, but the loss of the stolen items is not" before suggesting that this approach

Thus, the relevant terms of the insurance policy are rendered ambiguous by conflicting coverage and exclusions, *i.e.*, a provision that excludes coverage of losses by burglary and a provision that includes coverage for damage to the dwelling or other structures caused by burglars.[15]

After strictly construing the ambiguous exclusion and coverage provisions in Neisler's favor, and *against* Auto-Owners, we agree with the trial court that Auto-Owners is liable for the cost of repairing the damage to the dwelling caused during commission of the burglary.[16] This includes the cost of labor and material to repair

---

"is sensible in light of the presumption favoring coverage when the provisions are ambiguous," but opining that the "result is difficult to reconcile with the standard policy language which includes an exception to the theft exclusion, allowing coverage for damage caused by burglars entering and exiting the building").

[15] *Cf. United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 SW2d 353, 355-56 (Tex. 1971) (acknowledging that intermediate appellate court found insurance policy provisions related to burglary ambiguous, but finding no ambiguity by construing questionable provision to "exclude *personal* property from coverage" but not damage caused to building *by* burglars (emphasis supplied)).

[16] *Cf. Pacific Indem. Co. v. N.A., Inc.*, 120 Ga. App. 793, 794-95 (1) (172 SE2d 192) (1969) (holding that exclusionary provision for theft barred recovery, and noting that "[b]urglary is not involved in this case as there is no evidence whatsoever indicating burglary"); *Theo v. Nat'l Union Fire Ins. Co.*, 99 Ga. App. 342, 345, 347 (2) (109 SE2d 53) (1959) (physical precedent only as to Div. 2) (holding that "loss of bathroom fixtures, kitchen sink, plumbing, electric hot water heater, electric refrigerator and window frames and a 50-foot length of sewer pipe" was "due to burglary or theft, which, under the provisions of the policy . . . clearly was not

9

that damage through the replacement of the items that were removed (though not the

covered" when policy insured against perils of "[b]urglary, except with respect to property taken by burglars" and "[v]andalism and malicious mischief" except for "any loss by pilferage, theft, burglary or larceny"); *SJP Props., Inc. v. Mount Vernon Fire Ins. Co.*, No. 4:14–CV–694–JAR, 2015 WL 4524337, at \*5, 7 (E.D. Mo. 2015) (holding that removal of copper materials was not covered by insurance policy when policy covered "vandalism, meaning willful and malicious damage to, or destruction of the described property" but excluded coverage for loss or damage "caused by or resulting from theft").

cost of the items themselves).[17] Thus, the trial court did not err in granting summary judgment to Neisler on this issue.

b. *Coverage for recovery of "normal rents."*

As previously noted, the policy at issue also provided that

[i]f a covered loss makes the described premises unfit to live in, we will pay for your loss of normal rents resulting from such covered loss while the described premises is unfit to live in. We will not pay charges and expenses which do not continue during that time. We will pay this loss

---

[17] *See F.E. Sterling v. Audobon Ins. Co.*, 452 So2d 709, 716 (La. Ct. App. 1984) ("Because of the added language allowing coverage for damage caused by burglars, the insureds are entitled to the cost necessary to install replacement items but not the costs of the items themselves."); *Pryor v. State Farm Fire & Cas. Co.*, 141 Cal.Rptr. 394, 396 (Cal. Ct. App. 1977) (holding that, although "replacement cost of the stolen items" was not compensable, that the removal of the various appliances and wiring "left holes and gaps in the cabinetry, walls and floors which had to be repaired before the houses would be marketable" and that "in the act of removing goods from the house, the burglars caused willful damage that is compensable under the policies" such that the correct measure of damages was "the installation costs after new appliances, carpeting, and light fixtures have been purchased"); *see also Aetna Casualty & Sur. Co. v. Ardizone*, 481 So2d 380, 384-85 (IV) (Ala. 1985) (holding that "some of the items related to the subject warehouse were stolen, and . . . the insurance company should not be liable for the replacement cost of those items," but "it is equally clear that some of the damage of which Plaintiffs complain was the direct result of vandalism; thus, the insurance company will be liable for the total cost, both of materials and labor, for the repair of that damage"); *Benson Holding Corp. v. New York Prop. Ins. Underwriting Ass'n*, 478 NYS2d 570, 571 (NY Civ. Ct. 1984) ("[I]t would seem that any forceful or violent severing and removal of property that had been affixed to the premises constitutes vandalism and the loss of the property thus removed is not excluded as pilferage, theft, etc.").

11

of normal rents only for the shortest time needed to make the rented part fit to live in.

Unlike the provisions referencing vandalism and burglary, the provision as to "normal rent," though unclear as to what constitutes "normal rent," unambiguously requires that the property actually have a tenant at the time of loss. Indeed, the final sentence in this provision makes clear that Auto-Owners will pay the insured's loss of normal rents "only for the shortest time needed to make *the rented part* fit to live in."[18] And because the lost-rent provision unambiguously provides for the recovery

---

[18] *See Certain Underwriters at Lloyd's London v. Hogan*, 556 SE2d 662 (NC App. 2001) (holding that policy unambiguously provided for recovery of lost rent only for property being rented at the time of loss when policy provided, *inter alia*, that "[i]f a loss . . . makes that part of the insured premises rented to others (under a 'rental contract') not fit to live in, we cover your actual loss of rents . . . ." (emphasis omitted)); *Whitney Estate Co. v. N. Assurance Co. of London*, 155 Cal. 521, 524-25 (Cal. 1909) (holding that insurance policy provided for recovery of gross rents, not net rents, when the policy made the insurance company "liable for the 'actual loss of rent ensuing' from the fire, and [made] provision for the manner of determining the loss" in that the loss was "to be based upon the rentals in force from the rented portions of the premises at the time of fire and to be 'computed from the date of the fire for the time it would require to put the premises in tenantable condition'"). *Cf. Ventura Kester, LLC v. Folksamerica Reinsurance Co.*, 161 Cal.Rptr.3d 875, 881 (Cal. Ct. App. 2013) (holding that policy provisions for coverage of lost rent were ambiguous when they "provide[d] coverage of the loss of rents the owner would have collected but for the property damage" and noting that "[r]ental property is often vacant between tenants" and the policy "provided coverage for damage to the building regardless of whether the property was vacant").

12

of lost rent only for property that is being rented out at the time a covered loss occurs, the trial court erred in granting summary judgment to Neisler on this issue. Accordingly, we reverse the trial court's determination in this regard.

2. *Bad faith under OCGA § 33-4-6.*

Finally, Auto-Owners argues that the trial court erred in denying its motion for summary judgment as to Neisler's request for attorney fees for bad-faith refusal to pay his claim.[19] In light of our reversal of the trial court's grant of summary judgment to Neisler in Division 1 (b) *supra*, we agree in part.

To support a cause of action under OCGA § 33-4-6, "the insured bears the burden of proving that the refusal to pay the claim was made in bad faith."[20] To do so, the insured must prove "(1) that the claim is covered under the policy, (2) that a

---

[19] *See* OCGA § 33-4-6 (a) ("In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.").

[20] *Assurance Co. of Am. v. BBB Service Co., Inc.*, 259 Ga. App. 54, 57 (2) (576 SE2d 38) (2002) (punctuation omitted); *accord Atlantic Title Ins. Co. v. Aegis Funding Corp.*, 287 Ga. App. 392, 393 (651 SE2d 507) (2007).

13

demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."[21]

As for the insurer, a complete failure to prove any defense to an action on the policy is "evidence of the bad faith contemplated by [OCGA § 33-4-6], and subjects the insurer to a verdict for the statutory penalty and attorney's fees."[22] But a defense that shows "reasonable and probable cause for making it would vindicate the good faith of the company as effectually as would a complete defense to the action."[23] And, of course, penalties for bad faith are "not authorized where the insurance company

---

[21] *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007); *accord Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 730 (2) (b) (691 SE2d 633) (2010).

[22] *Reserve Life Ins. Co. v. Ayers*, 217 Ga. 206, 213 (3) (121 SE2d 649) (1961); *accord Key Life Ins. Co. of SC v. Mitchell*, 129 Ga. App. 192, 194 (4) (198 SE2d 919) (1973); *see also Griffin*, 302 Ga. App. at 731 (2) (b) ("Bad faith is shown by evidence that under the terms of the policy under which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." (punctuation omitted)).

[23] *Assurance Co. of Am.*, 259 Ga. App. at 57 (2) (punctuation omitted); *accord Moon v. Mercury Ins. Co. of Ga.*, 253 Ga. App. 506, 507 (2) (559 SE2d 532) (2002).

14

has any reasonable ground to contest the claim and where there is a disputed question of fact."[24]

As discussed *supra* in Division 1 (b), Auto-Owners had a complete defense to Neisler's claim that he was entitled to lost rent under the terms of the insurance policy. Thus, because Auto-Owners had reasonable grounds to contest Neisler's claim for lost rent, penalties for bad faith are not authorized, and the trial court erred in failing to grant summary judgment to Auto-Owners as to that particular claim.[25] Accordingly, we reverse this aspect of the trial court's order.

The trial court, however, properly denied summary judgment to Auto-Owners on Neisler's bad-faith claim as it relates to the refusal to pay for the burglary damages discussed in Division 1 (a) *supra.* The record reflects that, in correspondence between

---

[24] *Assurance Co. of Am.*, 259 Ga. App. at 57 (2) (punctuation omitted); *see also Rentrite, Inc. v. Sentry Select Ins. Co.*, 293 Ga. App. 643, 648 (2) (667 SE2d 888) (2008) ("An insured cannot sustain a cause of action for bad faith where an insurer had any reasonable ground to contest the claim made under the insurance policy." (punctuation omitted)).

[25] *See Rentrite, Inc.*, 293 Ga. App. at 648 (2) (affirming grant of summary judgment on bad-faith claim as to claim for loss that was excluded from policy coverage); *Assurance Co. of Am.*, 259 Ga. App. at 57 (2) (holding that trial court did not err in granting summary judgment to insurance company when there were disputed questions of fact as to insured's entitlement to coverage under a particular clause of the policy).

Auto-Owners and Neisler, Auto-Owners was placed on notice as to the ambiguities in the policy's coverage and of the rules of contract construction, which dictate that ambiguous insurance-contract language be construed in favor of the insured. Thus, it cannot be said *as a matter of law* that Auto-Owners had a reasonable defense or probable cause to deny Neisler's claim in this regard,[26] and the trial court properly denied summary judgment to Auto-Owners on this particular bad-faith claim.[27] Thus, we affirm this aspect of the trial court's order.

Accordingly, for all of the foregoing reasons, we affirm the trial court's order on the issue of coverage for damages related to burglary, reverse the trial court's

---

[26] *See Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc.*, 285 Ga. App. 844, 850 (3) (648 SE2d 170) (2007) (holding that it could not be said that, as a matter of law, insurance company had a reasonable defense to claim when insurance company, through correspondence, had been put on notice of the difficulty in construing policy); *First Fin. Ins. Co. v. Am. Sandblasting Co.*, 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996) (physical precedent only as to Div. 1) (holding that trial court properly awarded bad-faith damages to plaintiff when insurance company had been put on notice, through correspondence, that policy contained an ambiguity and that ambiguous language in insurance contracts is to be construed in favor of the insured).

[27] *See Rentrite, Inc.*, 293 Ga. App. at 648 (2) (despite affirming grant of summary judgment to insurance company on bad-faith as to claim for loss that was excluded from policy coverage, nevertheless reversing grant of summary judgment on bad-faith claim for loss that insurance company argued was not covered, but insurance company's representations to the insured, trial court, and court of appeals misstated the policy language).

16

order on the issue of recovery of "normal rents," and affirm in part and reverse in part on the issue of bad-faith recovery under OCGA § 33-4-6.

*Judgment affirmed in part and reversed in part. Ellington, P. J., and McFadden, J., concur.*