[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13649

_____

EARL D. BARRS,

Plaintiff-Appellee,

*versus*

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:19-cv-00494-TES

_____

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

PER CURIAM:

This insurance-coverage dispute arises out of a construction project gone awry. The plaintiff in this action, Earl Barrs, originally sued AAA General Contractors, Inc., which he had hired to complete the construction work. That suit alleged several negligence-, contract-, and warranty-related claims against AAA; resulted in a consent judgment in Barrs's favor; and assigned to Barrs any coverage claims that AAA might have against its insurer, Auto-Owners Insurance Company. In the follow-on action that underlies this appeal, Barrs sued Auto Owners, claiming that AAA's policy covered the damage that AAA's misconduct had caused his property.

After undertaking a choice-of-law analysis, the district court applied Georgia law and awarded summary judgment to Barrs. Auto-Owners appealed, raising three issues. First, it contends that the damages that Barrs claims aren't covered by its policy. Second, it argues that it has no duty to indemnify Barrs because the consent judgment in the underlying suit wasn't allocated between claims for which the policy might provide coverage and those for which it doesn't. And finally, it asserts that Barrs admitted that no coverage exists for the consent judgment.

After careful review of the parties' arguments, and with the benefit of oral argument, we affirm.[1]

---

[1] We review a district court's grant of summary judgment de novo and its factual findings for clear error. *See Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1325 (11th Cir. 2001). Summary judgment is appropriate when

# I

Earl Barrs contracted with AAA General Contractors to deconstruct a building on Barrs's property.[2]  AAA, in turn, hired Z & H Enterprises, LLC, which was solely owned by Zachary Hood (collectively, "Hood"), to oversee the deconstruction.

During the course of the project, Barrs noticed that work wasn't being completed and that materials were missing.  As it turned out, Hood had stolen those missing materials.  Barrs ultimately terminated his contract with AAA, claiming that its negligence allowed the theft and delayed the project.  Barrs then notified Auto-Owners, as AAA's insurer, that he would file suit against AAA for breach of contract and negligence.

AAA's insurance policy with Auto-Owners was issued and delivered to AAA in Alabama.  In relevant part, the policy provides coverage for "property damage" caused by an "occurrence."  Auto-Owners Policy (Doc. 26-3) at 125, 140.  The policy excludes certain items from coverage, including for (1) property damage "expected or intended from the standpoint of the insured," (2) property damage incurred to "[p]ersonal property in the care, custody, or control of, or over which physical control is being exercised for any purpose by any insured," and (3) damage "arising out of . . . [a] delay

the record submitted by the parties shows that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

[2] These facts were undisputed in the district court and taken as established for summary judgment purposes.

or failure by [the insured] or anyone acting on [the insured's] behalf to perform a contract or agreement in accordance with its terms." *Id.* at 126, 129. The policy defines "insured" as the named insured and any employees acting within the scope of employment or performing duties related to the conduct of the insured's business. *Id.* at 134.

Auto-Owners conducted its own investigation and sent a letter to AAA declaring that it would not defend AAA in any dispute between AAA and Barrs because coverage did not exist under the policy. Barrs then filed suit against AAA to recover damages for AAA's alleged negligent acts regarding the deconstruction project. *See Barrs v. AAA Gen. Contractors, Inc.*, No. 5:17-CV-335-MTT (M.D. Ga. 2018). The complaint in that lawsuit alleged six theories of liability against AAA: (1) negligent deconstruction, (2) vicarious liability/respondeat superior, (3) negligent hiring and retention, (4) negligent supervision, (5) breach of contract, and (6) breach of warranty.

Barrs and AAA ultimately entered into a settlement agreement in which AAA admitted liability in the amount of $557,500.00 to claims of negligent deconstruction (Count I), negligent hiring and retention (Count III), and negligent supervision (Count VI). A consent judgment was entered against AAA that closely tracked the settlement agreement but did not indicate which portions of the

damages award was attributed to which claims.[3]  The agreement also assigned Barrs any and all of AAA's right to claim coverage and to recover available funds under Auto-Owners' policy.

Barrs then filed this suit against Auto-Owners to enforce any insurance claim that he had been assigned under the agreement. Auto-Owners removed to federal court.  Following cross-motions for summary judgment on the coverage issues, the district court issued an order that granted in part and denied in part the motions. The district court concluded that Georgia law applied to the dispute and that the unallocated consent judgment consisted of both covered and non-covered claims.  It found that Auto-Owners' policy provided coverage for Barrs's claims of negligent hiring, retention, and supervision to the extent that he sought damages for stolen lumber and materials.  But the district court also concluded that the policy didn't cover the portion of the consent judgment premised on faulty workmanship or improper deconstruction.

Following this determination, Auto-Owners filed its second motion for summary judgment as to whether it owed any indemnification to Barrs in conjunction with the damages forming the basis of the consent judgment, which the district court denied.

---

[3] This type of agreement is known in our circuit as a *Coblentz* agreement, named for the former-Fifth Circuit case *Coblentz v. American Surety Co. of New York*, 416 F.2d 1059 (5th Cir. 1969).  That case held that if a liability insurer is informed of an action against its insured, but declines to defend the insured, the insurer may be held to a consent judgment entered in that action absent fraud or collusion.  *Id*. at 1063.

The district court then issued a show-cause order as to why it should not proceed to enter final summary judgment in favor of Barrs.  Following responses to the show-cause order, the district court entered a final order granting summary judgment to Barrs in the amount of $557,500.  On that same day, the district court entered final judgment on this order.

This is Auto-Owners' appeal.  Auto-Owners raises three challenges:  First, it contends that the damages Barrs claims aren't covered by its policy.  Second, it argues that it has no duty to indemnify Barrs against the consent judgment because the judgment is not allocated between covered and uncovered claims.  And finally, it asserts that Barrs admitted that no coverage exists for the consent judgment.  We first address a threshold choice-of-law issue.  We then turn to Auto-Owners' three merits arguments.

## II

This case is in federal court by virtue of diversity jurisdiction. We must therefore decide, as a threshold matter, which law to apply before reaching the merits.  In diversity cases, a federal court applies "the law of the forum in which it sits."  *LaTorre v. Conn. Mut. Life Ins. Co.,* 38 F.3d 538, 540 (11th Cir. 1994).  The case was filed in Georgia, so Georgia's choice-of-law rules apply.  *Frank Briscoe Co. v. Ga. Sprinkler Co.,* 713 F.2d 1500, 1503 (11th Cir. 1983) ("A federal court faced with [a] choice of law issue must look for its resolution [in] the choice of law rules of the forum state.").

In Georgia, the doctrine of *lex loci contractus*—meaning the law of the place in which the contract was made—governs contract

22-13649            Opinion of the Court            7

disputes, including those involving insurance policies. *Gen. Tel. Co. of the Se. v. Trimm,* 311 S.E.2d 460, 461–62 (Ga. 1984). Under Georgia law, a contract is deemed to have been "made" in the state "where the last act essential to the completion of the contract was done." *Id.* For insurance contracts, Georgia law dictates that it is "made" where the contract is delivered. *See Pink v. A.A.A. Highway Express, Inc.*, 13 S.E.2d 337, 334 (Ga. 1941). Both parties agree that the insurance policy was delivered to AAA in Alabama.

But that's not the end of our analysis—there's an exception to the *lex loci contractus* rule. Georgia courts will consider a foreign state's law only when it involves statutes or judicial decisions. *See Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 833–34 (Ga. 2017). Where the law in question is another state's common law, Georgia privileges its own common law. *Id.* Because neither party contends that an Alabama statute or judicial decision interpreting such a statute is at play here, we apply Georgia's common law.

### III

Having determined that Georgia law applies, we must now consider the three merits issues raised on appeal: Whether (1) Auto-Owners' policy covers the damages for the material Hood stole from Barrs; (2) Auto-Owners has a duty to indemnify Barrs even though the consent judgment is not allocated between claims;

and (3) Barrs admitted that the consent judgment did not cover his claims.

## A

Auto-Owners first contends that its policy doesn't cover the cost of the materials that Hood stole from Barrs. We disagree.

The policy offers coverage for damages that result from "property damage" caused by an "occurrence." Auto-Owners Policy at 125. The policy defines "occurrence" as an "accident." *Id.* at 140. Though the policy does not itself define "accident," Georgia common law indicates that "[i]n an insurance policy, an accident is an unexpected happening rather than one occurring through intention or design." *Rucker v. Columbia Nat'l Ins. Co.*, 705 S.E.2d 270, 273 (Ga. Ct. App. 2010).

We determine whether something was an accident by viewing the event from the standpoint of the insured. *Id.* at 273–74. Georgia courts have determined that negligent acts count as "accidents" for purposes of insurance coverage. *See Hathaway Dev. Co. v. Am. Empire Surplus Lines Ins. Co.*, 686 S.E.2d 855, 860–61 (Ga. Ct. App. 2009).

Auto-Owners' policy excludes certain items from coverage, so that even if an event counts as an "occurrence" that causes "property damage," it may still be excluded from coverage based on the terms of the policy. "An insurer seeking to defeat a claim based on a policy exclusion has the burden of proving that the exclusion is applicable, and the absence of evidence does not prove the exclusion applies." *Id.* at 861. Insurance-policy exclusions are

"narrowly and strictly construed against the insurer and [forgivingly] construed in favor of the insured to afford coverage." *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) (alteration in original; citation and quotation marks omitted).

AAA admitted liability for negligent hiring, retention, and supervision—all of which, Barrs asserts, and Auto-Owners doesn't dispute—qualify as "occurrences" under the policy. But Auto-Owners points to three possible exclusions. None bars coverage.

**Exclusion (a).** This provision excludes from coverage "'property damage' expected or intended from the standpoint of the insured." Auto-Owners Policy at 126. Auto-Owners argues that Hood was AAA's employee, and therefore was an "insured" according to the terms of the policy. But we needn't resolve whether Hood was AAA's employee, independent contractor, or neither. Even assuming, for the sake of argument, that he was AAA's employee, this exclusion still would not bar coverage. According to the terms of the policy, an employee is an insured, "but only for acts within the scope of [his] employment . . . or while performing duties related to the conduct of . . . business." *Id.* at 134. Auto-Owners offers no support for an argument that Hood was acting within the scope of his purported employment; indeed, it doesn't even respond to Barrs's counter-argument in its reply brief. We agree with Barrs that Hood, even if employed by AAA, was not acting within the "scope of [his] employment or . . . performing duties" related to it when he stole materials from AAA.

Auto-Owners alternatively argues that Barrs's derivative claims of negligent hiring and retention are excluded from coverage because those claims "would not exist but for the intentional theft of his personal property by Hood and its failure to perform its work in a workmanlike manner." It points to a few Georgia cases as support, but each case is distinguishable. In *Continental Casualty Co. v. H.S.I. Financial Services, Inc.*, 466 S.E.2d 4, 6 (Ga. 1996), the express terms of the insurance policy excluded coverage for claims that "ar[ose] out of" certain intentional conduct. No such language appears in the Auto-Owners policy. Similarly, in *Jefferson Insurance Co. of New York v. Dunn*, 496 S.E.2d 696, 697 (Ga. 1998), the insurance policy specifically barred coverage for claims for injuries "caused by" an assault and battery, thus excluding an assault and battery by the insured's employee. No such specific carveout exists here.

**Exclusion j(5).** This provision excludes coverage for "property damage" to "[p]ersonal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured[.]" Auto-Owners Policy at 128–29. Auto-Owners argues that this exclusion bars coverage here because AAA admits that Hood was its agent and therefore was "in possession and control of . . . Barrs'[s] property" when the property was converted. Again, we needn't decide whether or not Hood was AAA's agent or employee. Assuming, for the sake of argument, that Hood was AAA's employee, he wasn't acting within the scope of his employment—as just explained—and therefore wasn't an "insured"

for the purposes of the policy. Therefore, this exclusion does not foreclose coverage.

**Exclusion (m).** This exclusion bars coverage for property damage to "impaired property" or "property that has not been physically injured, arising out of . . . [a] delay or failure by [AAA] or anyone acting on [AAA's] behalf to perform a contract or agreement in accordance with its terms." *Id.* at 129. Auto-Owners contends that Barrs's judgment damages are excluded because AAA contracted with Hood to stack and bind salvageable wood for Barrs's sole use, and because Hood breached that contract when he stole the wood and other materials. Therefore, Auto-Owners says, the property damages arise from a delay or failure by AAA or AAA's agent to perform a contract or agreement in accordance with its terms—not from a covered "occurrence." But as the district court correctly held, Barrs's claim does not "arise out of" a breach of contract—rather, he complains that AAA's negligence allowed Hood to steal Barrs's materials. Therefore, this exclusion does not apply.

Because the policy covers occurrences and no exclusion bars coverage here, we affirm the district court's holding that the policy covers Barrs's claims.

**B**

Auto-Owners next disclaims any duty to indemnify Barrs because the consent judgment was not allocated between covered and non-covered claims. The district court disagreed and held that Auto-Owners had a duty to provide recovery to Barrs. Because

we've found nothing in Georgia law that prevents the enforcement of an unallocated consent judgment, we agree with the district court and affirm on this issue as well.

The district court held that "[w]hen an insurance company refuses to defend its insured, without any reservation of rights, and its insured secures a judgment (without fraud or collusion), an insurance company must pay the entire judgment." It determined that the consent judgment here was enforceable because (1) it complied with the procedures established in *Coblentz v. American Surety Company of New York*, 416 F.2d 1059 (5th Cir. 1969); (2) Georgia common law didn't appear to allow an insurer a second bite at the apple when it chose not to participate in the underlying lawsuit; and (3) Barrs's declaration attested that the $557,500 settlement was less than the value of the stolen lumber, so even if the consent judgment wasn't properly allocated, the recovery was reasonable.

We agree that the consent judgment was crafted and executed in compliance with *Coblentz*. To be sure, although Georgia law estops an insurer from contesting its insured's liability when it refuses to participate in the underlying lawsuit, it doesn't necessarily prevent an insurer from later contesting coverage. *See, e.g.*, *Southern Guar. Ins. Co. v. Dowse*, 605 S.E.2d 27, 28 (Ga. 2004); *Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co.*, 442 S.E.2d 778, 783 (Ga. Ct. App. 1994). Even so, we affirm because we've been pointed to nothing in Georgia law that clearly prevents the

22-13649                Opinion of the Court                13

enforcement of unallocated consent judgments.[4]  To hold that un-allocated consent judgments are unenforceable would be to shift the burden to the insured and would require meddling in Georgia law to a degree that we think would be imprudent.  *See Salinero v. Johnson & Johnson*, 995 F.3d 959, 969 (11th Cir. 2021) (observing that "a federal court sitting in diversity must proceed with caution in making pronouncements about state law" (quotation marks omitted)).

## C

Finally, Auto-Owners argues for the first time on appeal that Barrs judicially admitted that the consent judgment was not covered in his Statement of Material Facts in Support of his Opposition to Auto-Owners' second summary-judgment motion.  There, Barrs stated in a section about the "determination of damages" that Auto-Owners is liable "for the damages Barrs incurred as a result of [AAA's] admitted negligence as set forth above" and that "[t]he Parties agree that these damages concern damage to wood and

---

[4] In its opening brief, Auto-Owners cited to a Georgia case that requires attorneys' fees for bad faith to be allocated between successful and unsuccessful claims.  *See Monterrey Mexican Rest. of Wise, Inc. v. Leon*, 638 S.E.2d 879, 892 (Ga. Ct. App. 2006), *overruled on other grounds by Temple v. Hillegass*, 810 S.E.2d 625 (Ga. Ct. App. 2018).  No such case exists in the settlement-award context, nor does the reasoning about attorneys' fees necessarily extend to it.

brick during the deconstruction process which resulted because of [AAA's] negligence as set forth above."

Auto-Owners contends that this statement means that Barrs admitted that his judgment award is based solely on defective work (which is not covered under the policy) rather than AAA's negligence (which, as already explained, is covered). Basically, Auto-Owners wants us to read this sentence as saying that any damage happened during *and due to* the deconstruction process and not because of Hood's theft.

We decline to adopt this strained reading of the text. Barrs's argument is that Hood was able to steal materials because of AAA's negligence during the time frame of the deconstruction process. Therefore, Barrs's admission is about the time frame in which the relevant actions took place—namely, Hood's theft and AAA's negligence in allowing him to steal materials—not an admission that there was faulty workmanship in the deconstruction process itself.

**AFFIRMED.**