**RESOLUTION TRUST CORPORATION, Plaintiff–Appellee,**

v.

**James M. ARTLEY, et al., Defendants, Third–Party Plaintiffs, Appellees,**

**International Insurance Company, Inc., Defendant, Third–Party Defendant, Appellant,**

**The Cincinnati Company, Defendant, Third–Party Defendants.**

No. 93–8895.

United States Court of Appeals, Eleventh Circuit.

July 7, 1994.

**1364**

James B. Gilbert, Jr., Lisa Godbey, Gilbert, Harrell, Gilbert, Sumerford & Martin, Brunswick, GA, Louis G. Corsi, Stephen Jacobs, William A. Edelson, Siff Rosen, New York City, for defendant-appellant.

Susan D. Burnell, John J. Almond, C.B. Rogers, Rogers & Hardin, Atlanta, GA, Donna Linn Crossland, Gilbert C. McLemore, Jr., Fendig, McLemore, Taylor & Whitworth, Brunswick, GA, for plaintiff-appellees.

Keith A. Hanson, Ellen B. Van Vechten, Hanson & Peters, Chicago, Il, for amicus curiae.

Before EDMONDSON, Circuit Judge, GODBOLD and JOHNSON, Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

Third-party defendant, International Insurance Company ("Appellant"), appeals the

district court's denial of its motion for summary judgment. We reverse.

## I. STATEMENT OF THE CASE

### A. Background Facts

In 1984, Great Southern Federal Savings Bank ("Great Southern"), whose principal place of business is Savannah, Georgia, purchased a directors and officers liability insurance policy ("Policy") from Appellant. The Policy was a claims made policy protecting Great Southern's directors, officers, and employees ("Insureds"), covering any written claims submitted during the policy period or within sixty days after its termination. Section VII.C of the Policy obligated the Insureds to provide written notice "as soon as practicable of any claim made" as a "condition precedent to the Insured's right of coverage."

With regard to potential claims, Section VII.A of the Policy required the Insureds to give written notice to Appellant of (i) any written or oral notice received by the Insureds from a party stating that the party intended to hold them responsible for wrongful acts, or (ii) any "event or circumstance" of which the Insureds become aware "which may subsequently give rise to a claim being made" against them. To satisfy Section VII. A.(ii), the written notice had to (a) describe the wrongful act, (b) name those persons alleged to have committed the act, and (c) provide the date of the "act or event."

Over the Policy's life, Great Southern sent certain financial information to Appellant, including its 1984 Annual Report, 10–K and 10–Q forms, quarterly and monthly Federal Home Loan Bank Board ("FHLBB") financial reports, and its March 31, 1985 quarterly report. These forms demonstrated the deterioration of Great Southern's loan portfolio as evidenced by increasing numbers of bad loans and real estate acquired via foreclosure.[1] Appellant also received Great

Southern's October 26, 1984, eleven page letter to FHLBB, which responded to FHLBB's criticisms of (1) Great Southern's lending practices, (2) some of the loans involved in this suit, and (3) Great Southern's management incentive program that paid employee bonuses for making loans.

Great Southern sought to renew the Policy for 1985, representing to Appellant that: (1) no claims were pending against its officers and directors; (2) no officer or director was aware of any acts that could provide the basis for a claim; and (3) if such knowledge or awareness existed, the related act or omission would be outside the Policy.[2] Appellant declined to renew the Policy. On June 23, 1985, Appellant canceled the Policy, and Great Southern obtained a one year extension of the Policy's discovery period for acts committed prior to June 23, 1985.

On June 20, 1985, Great Southern acquired directors and officers insurance from the Cincinnati Insurance Company ("Cincinnati"), making representations similar to those given Appellant.[3] The Cincinnati policy was not renewed upon its termination on June 23, 1986. Great Southern made no claims during the lifetime of either the Policy or the Cincinnati policy.

### B. Procedural History

In August 1992, the Resolution Trust Corporation ("RTC") filed this action in the Southern District of Georgia, seeking in excess of fifty-three million dollars against former officers and directors of Great Southern. The RTC alleged various claims of negligence, gross negligence, breach of fiduciary duties, and breach of contract. In October 1992, seventeen of these officers and directors ("Officers"), as third-party plaintiffs, filed complaints against third-party defendants, Appellant and Cincinnati, seeking coverage under their respective policies. The Officers claimed that the various financial

---

1. Appellant's internal documents showed that as of May 9, 1985, Appellant knew that Great Southern had delinquent loans equal to eighty percent of its regulatory net worth and had lost nearly three million dollars over the previous seven months.

2. These same representations were also made when Appellant first applied for the Policy.

3. Because Cincinnati has interests similar to those of Appellant, we granted it *amicus* status for this appeal.

**1366**

documents sent to Appellant over the course of the Policy satisfied the notice requirements of Section VII.A.(ii).[4] Appellant moved for partial summary judgment, seeking dismissal of the third-party complaint because (1) no claim was made during the Policy's lifetime, and (2) the Officers failed to comply with Section VII.A.(ii)'s notice requirements. The district court denied the motion, reasoning that Section VII.A.(ii) was ambiguous and that a material issue of fact existed as to whether the financial documents provided to Appellant satisfied Section VII. A.(ii). Subsequently, the court granted Appellant's motion for certification under 28 U.S.C.A. § 1292(b) (West 1993).[5] On appeal, Appellant claims that the district court erred because the Policy is unambiguous and because the Officers did not provide the type of notice required by Section VII.A.(ii).

## II. ANALYSIS

This Court reviews *de novo* a district court's denial of a motion for summary judgment. *Integon Life Ins. Corp. v. Browning,* 989 F.2d 1143, 1148 (11th Cir.1993). This Court "must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. All evidence and reasonable factual inferences drawn therefrom are reviewed in the light most favorable to the party opposing the motion." *Warren v. Crawford,* 927 F.2d 559, 561–62 (11th Cir. 1991) (citations omitted).

### A. *Ambiguity*

■ Section VII.A of the Policy concerns potential claims against the Insureds that are not brought during the life of the Policy. Section VII.A.(ii) provides that if during the policy period:

the Insureds ... become aware of any event or circumstance which may subsequently give rise to a claim being made against the Insureds in respect of such alleged wrongful act, and shall during the policy period give written notice to the company containing (a) a description of the specific wrongful act, (b) the name of the individual or individuals alleged to have committed the act, and (c) the date of the alleged act or event, then this policy will apply to any claim or claims subsequently arising therefrom.

The Officers contend that Section VII.A.(ii) is ambiguous. They note that the first part of Section VII.A.(ii) refers to an "event or circumstance" while the second part refers to a "wrongful act." According to them, there is a substantial difference between an "event or circumstance" that might give rise to a claim, and a "wrongful act." Hence, they insist that a reasonable insured could believe that Section VII.A.(ii) is satisfied by giving notice of "events" or "circumstances" without having to describe any "wrongful act" associated with the event or circumstance. The Officers are mistaken.

■ It is the court's responsibility to determine if ambiguity exists. *Peterson v. Lexington Ins. Co.,* 753 F.2d 1016, 1018 (11th Cir.1985); *Travelers Ins. Co. v. Blakey,* 255 Ga. 699, 342 S.E.2d 308, 309 (1986).[6] To be ambiguous, a word or phrase must be . of uncertain meaning and fairly understood in multiple ways. *In re Club Assoc.,* 951 F.2d 1223, 1230 (11th Cir.1992); *Jefferson Pilot Life Ins. Co. v. Clark,* 202 Ga.App. 385, 414 S.E.2d 521, 524 (1991), *cert. denied* (Ga.1992). "The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." *Hercules Bumpers, Inc. v. First State Ins. Co.,* 863 F.2d 839, 841

4. The Officers concede that Great Southern did not file a formal claim during the policy period and that it did not comply with the requirements of Section VII.A.(i), which required Great Southern to notify Appellant if it became aware of any party who intended to hold any officer or director responsible for the results of any wrongful act. Accordingly, the Officers base their claim on Section VII.A.(ii).

5. This section allows a district judge in a civil action to certify an issue for immediate appeal when the judge believes the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal ... may materially advance the ultimate termination of the litigation." § 1292(b).

6. We use Georgia law to construe this contract.

(11th Cir.1989) (quoting *Nationwide Mutual Fire Ins. Co. v. Collins*, 136 Ga.App. 671, 222 S.E.2d 828, 831 (1975)). Moreover, ambiguity may not be created by lifting a single word of a contract out of context, *Serrmi Prods. v. Insurance Co.*, 201 Ga.App. 414, 411 S.E.2d 305, 306 (1991), *cert. denied,* (Ga. 1992). Accordingly, Georgia law requires that we examine insurance contracts as a whole when construing any portion thereof. *Hercules Bumpers*, 863 F.2d at 841. Application of these rules firmly demonstrates that Section VII.A.(ii) is susceptible to only one *reasonable* interpretation: that "event," "circumstance," and "wrongful act" refer to the same occurrence. In other words, there is no ambiguity—the three terms plainly mean the same thing. Because the term "such" precedes "wrongful act," it relates the "wrongful act" to the "event or circumstance which may subsequently give rise to a claim." Thus, the Policy's language makes sense only if it is construed to require notice of the "wrongful act" related to, or accompanying, the "event" or "circumstance" which may give rise to a claim. *See McCullough v. Fidelity & Deposit Co.*, 2 F.3d 110, 112 (5th Cir.1993) (using similar analysis to conclude that comparable language in an insurance contract was unambiguous). Thus, adequate notice of an "event" or "circumstance" includes a description of the related "wrongful act." Consequently, the district court erred by concluding that the Policy was ambiguous.

### B. *Notice*

■ The Officers next maintain that the district court correctly held that a jury question existed as to whether the Officers' provision of financial documents satisfied Section VII.A.(ii). We disagree.[7] Coverage under a claims made policy is effective only "if *the negligent or omitted act is discovered and brought to the attention of the insurer* within the policy term." *Serrmi*, 411 S.E.2d at 306

(citation omitted) (emphasis added). The essence of such a policy is notice to the insurer within the policy period. *Id. See FDIC v. St. Paul Fire and Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir.1993) ("[T]he notice provision of a 'claims made' policy is just as important to coverage as the requirement that the claim be asserted during the policy period."). Where, as here, the contract is unambiguous, "its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured." *Serrmi*, 411 S.E.2d at 306–07 (citations omitted). *See Richmond v. Georgia Farm Bureau*, 140 Ga.App. 215, 231 S.E.2d 245, 249 (1976) ("Insurance is a matter of contract and the parties are bound by the terms of the policy.").[8] Thus, to satisfy Section VII. A.(ii), the Officers had to provide written notice of any "event or circumstance" of which they were aware "which may subsequently give rise to a claim being made" against them. The notice had to (a) describe the wrongful act, (b) name those alleged to have committed the act, and (c) provide the date of the "act or event."

■ In this case, Appellant received no such notice during the policy period. Although the documents received by Appellant demonstrated that Great Southern's loan portfolio was troubled and that FHLBB was concerned about Great Southern's lending practices, the documents do not provide the specific notice of wrongful acts required under Section VII.A.(ii). That is, the documents (1) do not state what specific acts occurred, (2) name those who committed the acts, or (3) provide the date the events took place. Notice of an institution's worsening financial condition is not notice of an officer's or director's act, error, or omission. *See American Casualty Co. v. Continisio*, 17 F.3d 62, 64, 67–70 (3rd Cir.1994) (providing insurer with copies of bank's reports to

---

7. The district court predicated its holding on *FDIC v. St. Paul Fire & Marine Ins.*, 783 F.Supp. 1176 (D.Minn.1991), *rev'd*, 993 F.2d 155 (8th Cir.1993) and *United Ass'n Local 38 v. Aetna Cas. & Sur. Co.*, 790 F.2d 1428 (9th Cir.1986). However, *St. Paul* was reversed on appeal, while the Ninth Circuit departed from *Local 38* in *California Union Ins. v. American Diversified Sav.*, 914 F.2d 1271, 1278 (9th Cir.1990).

8. Consequently, excusing the insured from the notification provision or altering the provision is tantamount to a gratis extension of coverage to the insured. *See Serrmi*, 411 S.E.2d at 307; *McCullough*, 2 F.3d at 112.

FHLBB "does not create a jury issue on whether adequate information has been appropriately submitted"); *McCullough*, 2 F.3d at 112–13 (furnishing insurer with annual and quarterly reports revealing bank's worsening financial condition is insufficient notice). As for FHLBB's criticisms, we agree with the Ninth Circuit's holding that "the term 'claim' should not be interpreted so broadly as to include a regulatory agency's request [that] the insured comply with regulations" absent a threat by the agency to hold the insured liable. *California Union Ins. v. American Diversified Sav.*, 914 F.2d 1271, 1276–78 (9th Cir.1990) (letters from FHLBB relating bank's deficiencies and requesting immediate action by bank's directors coupled with order prohibiting bank from transferring assets do not constitute formal notice of a claim), *cert. denied*, 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991). *See FDIC v. Barham*, 995 F.2d 600, 603–05 (5th Cir.1993) (Comptroller of Currency settlement agreement in which bank promises to stop violating federal laws is inadequate notice of a claim).

We thus reject the Officers' view that the provision of financial reports and letters to FHLBB that documented Great Southern's declining financial strength, poor lending practices, and mismanagement satisfied the specific notice required by Section VII.A.(ii). Such a view, we believe, would destroy the notification requirements at the heart of a claims made policy—that coverage triggers only upon notice of the wrongful act. *See Serrmi*, 411 S.E.2d at 306 (for coverage to be effective, the negligent or omitted act must be brought to the insurer's attention during policy period). Under the Officers' view, the wrongful acts need not be specifically divulged; rather, they contend that it suffices if the insurer receives notice of mismanagement via financial reports and replies to FHLBB's criticisms. As noted by the Third Circuit, such a view would lead to the perverse situation in which "bank directors and officers would be better served to disguise potential claims [in their financial reports] so that they would be covered by insurance well into the future while not drawing attention to conduct that might increase future premiums, or terminate coverage altogether." *Continisio*, 17 F.3d at 68 (citation omitted).

This outcome would be unacceptable. Thus, the financial reports and regulatory correspondence provided by the Officers do not constitute notice to Appellant within the meaning of the Policy. Accordingly, the district court erred in finding that an issue of fact existed as to whether sufficient notice was given under the Policy.

## III. CONCLUSION

We REVERSE the district court's order denying partial summary judgment to Appellant and REMAND the cause to the district court with instructions to enter judgment in Appellant's favor.