**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A0840. BLUE RIDGE AUTO AUCTION v. ACCEPTANCE     McF-037
    INDEMNITY INSURANCE COMPANY, INC.

MCFADDEN, Presiding Judge.

Blue Ridge Auto Auction filed this action against Acceptance Indemnity Insurance Company, Inc. because it failed to defend Blue Ridge in certain personal injury actions and failed to pay the resulting claims. Blue Ridge and Acceptance Indemnity sought a preliminary determination of whether the claims were covered by an insurance policy Acceptance Indemnity had issued to a third party. The parties filed cross motions for summary judgment on the issue, and the trial court ruled in favor of Acceptance Indemnity, finding no coverage. We agree with Blue Ridge that coverage is provided by an exception to an exclusion in the policy. So we reverse the

trial court's grant of Acceptance Indemnity's motion for summary judgment and denial of Blue Ridge's motion for summary judgment.

1. *Facts*.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review the grant or denial of a motion for summary judgment de novo, "and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997) (citation omitted).

Here, the facts are largely undisputed. This lawsuit relates to a motor vehicle collision that occurred while Blue Ridge was conducting an automobile auction. A Blue Ridge employee was driving a car that struck many people attending the auction. The car was owned by Acceptance Indemnity's insured, Tommy Nobis Foundation, Inc., a charitable organization that operates a vehicle donation program. Individuals and companies donate used motor vehicles to Tommy Nobis. Tommy Nobis then uses auto auction companies to sell the vehicles. Tommy Nobis uses the net proceeds from the auto sales for charitable purposes. Since Tommy Nobis Foundation began the vehicle donation program, Tommy Nobis Foundation has been licensed by the state

2

of Georgia as a used motor vehicle dealer, but Tommy Nobis does not directly sell vehicles.

The Blue Ridge employee involved in the collision said that the car's accelerator stuck, which caused him to lose control, crash into a closed garage door, and drive into a building, where he struck a large number of people at the auction. A number of lawsuits were filed against Blue Ridge, and several resulted in judgments against Blue Ridge.

Blue Ridge asserted that the claims against it were covered by the insurance policy Acceptance Indemnity had issued to Tommy Nobis Foundation. Acceptance Indemnity denied coverage, leading to the instant lawsuit. The trial court ruled that the claims were not covered by the policy. Blue Ridge appealed.

2. *The insurance policy.*

Blue Ridge argues that the trial court erred in granting summary judgment to Acceptance Indemnity because Blue Ridge was an insured under the policy. We find that language in the policy crucial to the determination of whether Blue Ridge was an insured — the phrase "garage business" — is ambiguous in the context of this case. Because we must construe ambiguities against the insurer, we agree with Blue Ridge that it was an insured under the policy.

3

At the outset, we note that insurance in Georgia is a matter of contract, and this [c]ourt has long held that such contract disputes are well suited for adjudication by summary judgment because construction of a contract is ordinarily a matter of law for the court. And in construing a contract, we must first decide whether the language is clear and unambiguous. . . . [A]s is true with all contracts, unambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured. Thus, if the language is unambiguous, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning.

But if a contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity. And contractual provisions are ambiguous when they are susceptible to more than one meaning, even if each meaning is logical and reasonable. Indeed, a contract is ambiguous if the words leave the intent of the parties in question — i.e., that intent is uncertain, unclear, or is open to various interpretations.

In cases of ambiguity, there are three well-known rules of contract construction that apply: (1) ambiguities are strictly construed against the insurer as the drafter; (2) exclusions from coverage the insurer seeks to invoke are strictly construed; and (3) the contract is to be read in accordance with the reasonable expectations of the insured when possible. Indeed, when a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are

all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured. Furthermore, exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage.

*Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 286-287 (1) (779 SE2d 55) (2015) (citations, punctuation, and emphasis omitted). We turn to the policy provisions at issue with these guiding principles in mind.

The policy at issue is a garage policy of insurance. The declarations page of the policy lists the named insured as Tommy Nobis Foundation, Inc. It lists the "named insured's business" as "used auto dealer." On a document entitled "garage coverage form – auto dealers supplementary schedule," Tommy Nobis listed the "locations where [it] conduct[s] garage operations" as its business address in Marietta. The parties agree that the car involved in the accident was a "covered auto" for purposes of the policy.

For covered autos, the policy provides, "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from 'garage operations'

5

involving the ownership, maintenance or use of covered 'autos'. . . ." The policy defines "insureds" for covered "autos" as:

> (1) You [defined as Tommy Nobis] for any covered "auto". (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except: . . . (c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations". . . .

It is not disputed that Blue Ridge was using the covered auto with Tommy Nobis's permission or that it was using the covered auto while working in the business of selling the car. The issue is whether the business of selling the car was Tommy Nobis's "garage operations." The policy defines "garage operations" as

> the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

Although it is essential to the definition of "garage operations," the policy does not define the phrase "garage business." Because the meaning of this phrase is doubtful, it is ambiguous, and it renders the meaning of the phrase "garage operations"

6

ambiguous. See Black's Law Dictionary (10th ed. 2014) (defining "ambiguity" as "[d]oubtfulness or uncertainty of meaning or intention, as in a contractual term or statutory provision; indistinctness of signification, esp. by reason of doubleness of interpretation"). So we must apply the rules of contract construction. *Auto-Owners*, 334 Ga. App. at 287 (1)

Acceptance Indemnity argues, and the trial court agreed, that Blue Ridge was not an insured because although Blue Ridge was part of Tommy Nobis Foundation's "business operations," Blue Ridge was not part of Tommy Nobis's garage operations. But the policy does not make this distinction; the policy does not even include the phrase "business operations." The policy listed Tommy Nobis's business as "used auto dealer." Tommy Nobis's then-president and chief executive officer testified that Tommy Nobis "has not sold vehicles directly to buyers, as it does not have the facilities, personnel, or experience to do so. Rather [it] has engaged auto auction companies for the purpose of auctioning and selling its donated used motor vehicles."

Given that Tommy Nobis's business was listed on the policy as "used auto dealer," it is reasonable to conclude that the parties intended the phrase "garage business" to include Tommy Nobis's sale of its donated vehicles. And Tommy Nobis's use of an auto auctioneer was necessary, or at least incidental, to this

7

business. See Black's Law Dictionary (10th ed. 2014) (defining "incidental" as "subordinate to something of greater importance; having a minor role"). An insurance "contract must be construed in accordance with the reasonable expectations of the insured." *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (548 SE2d 67) (2001) (citation omitted). See *Auto-Owners*, 334 Ga. App. at 287 (1) ("the contract is to be read in accordance with the reasonable expectations of the insured when possible") (citations omitted). It is reasonable for Tommy Nobis to expect that its garage business, and thus its garage operations, includes the sale by auction of its donated vehicles.

Even assuming that Accidental Indemnity's construction of the phrase "garage operations" is also reasonable, Blue Ridge would be entitled to summary judgment. Conflicting, reasonable constructions of the policy language create an ambiguity that must be strictly construed against the insurer. *Auto-Owners*, 334 Ga. at 287 (1).

Acceptance Indemnity relies on *Thomas v. Intl. Indem. Co.*, 232 Ga. App. 574, (502 SE2d 512) (1998), as authority for its position that under the policy language, Blue Ridge's actions were not part of Tommy Nobis's garage operations. At first blush, *Thomas* seems on point. It relies on language identical to language in Tommy Nobis's policy to find no coverage. However, *Thomas* also relied on a limitation

8

absent from Tommy Nobis's policy. Most importantly, *Thomas* did not address the definition of the ambiguous term "garage business" found in Tommy Nobis's policy, the construction of which we rely upon to find coverage. So *Thomas* is distinguishable.

In *Thomas*, the plaintiff, Thomas, was involved in a collision with a car being driving by an employee of a repair shop. The car was owned by a person having it repaired at the shop. Thomas won a default judgment against the employee and the repair shop and sought coverage under the car owner's insurance policy. We affirmed the trial court's ruling that there was no coverage.

Examining language identical to the language in Tommy Nobis's policy, we observed that the policy "covered permissive users except for 'someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations."'" Id. at 575 (2). We held that "[t]his language specifically excludes situations where a covered automobile is being repaired by another entity on its premises." Id. We added that

> [n]othing in the record supports Thomas' contention that [the repair shop] was [the car owner's] "garage operation." On the contrary, the

policy limited coverage to garage operations located at [the car owner's] address. Further, the record shows that [the car owner] and [the repair shop] were totally separate entities. [The repair shop] was not even [the car owner's] exclusive provider of repair services. In fact, the record shows that [the car owner] made certain repairs at a garage on [the owner's] own facility.

Id. at 575-576 at (2). Here, however, as discussed more fully in Division 3 below, Tommy Nobis's policy did not limit coverage to garage operations located at its address. Further, *Thomas* did not address language crucial to our decision here, the policy's broad definition of "garage operations" as "all operations necessary or incidental to a garage business." Nothing in our opinion in *Thomas* indicates that the policy at issue there included the ambiguous "garage business" language included in Tommy Nobis's policy. Thus, although Blue Ridge, like the repair shop in *Thomas*, is a separate entity from and not the exclusive provider of services to the insured, *Thomas* is distinguishable.

3. *Location exclusion.*

Accidental Indemnity argues that the only garage operations covered by the policy are those operations conducted at Tommy Nobis's Marietta location. It relies on an entry in the document entitled "Garage Coverage Form - Auto Dealers

10

Supplementary Schedule." That entry, labeled "locations where you conduct garage operations," directs the insured to list its address with its "main business location as Location No. 1." Tommy Nobis listed only its Marietta address. Therefore, Acceptance Indemnity argues, only operations that occur at the Marietta address are covered as Tommy Nobis's garage operations.

But nothing in the policy expressly limits coverage to only the garage operations that occur at the locations listed on the supplementary schedule. Rather, the policy provides coverage for "garage operations" that include "*all* operations necessary or incidental to a garage business." (Emphasis supplied). Given that "exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and forgivingly construed in favor of the insured to afford coverage," *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. at 287 (1) (citations omitted), we do not believe that the entry on the supplementary schedule limits coverage to garage operations occurring at Tommy Nobis's business address.

For these reasons, the trial court erred in granting Acceptance Indemnity's motion for summary judgment and denying Blue Ridge Auto Auction's motion for summary judgment.

*Judgment reversed. Branch and Bethel, JJ., concur*.

11