**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 30, 2025**

# In the Court of Appeals of Georgia

A25A0990. STERLING SEACREST PRITCHARD, INC. v. HOLDERFIELD et al.
A25A0991. HOLDERFIELD v. MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA et al.

HODGES, Judge.

These related cases involve insurance coverage disputes concerning a separate medical malpractice action filed by Kayla Holderfield against two of her doctors. Holderfield and the doctors' insurance broker, Sterling Seacrest Pritchard, Inc. ("SSP"), appeal from the trial court's order on the parties' cross-motions for summary judgment finding that two insurance companies were not obligated to provide coverage to the doctors. The trial court concluded that the first insurance company, The Doctor's Company ("TDC"), did not receive a claim from the two doctors during its policy period. The trial court also found that a report to TDC by a

third doctor precluded coverage under the second policy issued by Medical Mutual Insurance Company of North Carolina ("Medical Mutual"). In Case No. A25A0990, SSP appeals from the denial of its motion for partial summary judgment, where the trial court rejected its argument that there was coverage under the TDC policy.[1] In Case No. A25A0991, Holderfield appeals from the trial court's determination that there was not coverage under either the TDC or Medical Mutual policy. For the following reasons, we affirm the trial court's order as it relates to TDC in Case Nos. A25A0990 and A25A0991, and reverse the trial court's order as it relates to Medical Mutual in Case No. A25A0991.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997); OCGA § 9-11-56 (c). This Court reviews the grant or denial of a motion for summary judgment de novo. *Joseph v. Certain Underwriters at Lloyd's London*, 356 Ga. App. 178 (844 SE2d 852) (2020). The questions presented by these appeals are whether the

---

[1] Because SSP appeals from the denial of its motion for summary judgment, rather than the grant of TDC's motion, it sought leave for interlocutory review of the trial court's order, which we granted. See Case No. A25I0092 (Dec. 10, 2024).

doctors are entitled to coverage under either insurance policy as a matter of law. The facts attendant to these questions are undisputed.

At all times relevant to these cases, Drs. Dixon Freeman and Lisa Blake were obstetricians working for the Northwest Georgia Medical Clinic ("NGMC"). Holderfield, who became pregnant in December 2019, saw Dr. Freeman in April 2020 for a prenatal visit when a blood test showed an unusually high glucose level, indicating that Holderfield had developed diabetes. Due to the COVID-19 emergency, Holderfield was not admitted to the hospital and due to confusion within NGMC, she was not referred to outpatient diabetes treatment. In May 2020, Holderfield saw Dr. Blake for another prenatal visit. Dr. Blake was aware that Holderfield had her glucose tested in her prior visit, but was unaware of the result. In June 2020, Holderfield saw a third doctor within NGMC, Dr. Kristen Leezer. Dr. Leezer noticed that Holderfield had an unusually high glucose level from a test given that day and noted her earlier diabetes screen result. Dr. Leezer admitted Holderfield to a hospital to address her blood-sugar results. While at the hospital, Holderfield's condition deteriorated and Dr. Leezer performed an emergency C-section on June 13, 2020. Holderfield's child

3

was delivered over two months prematurely and Holderfield was life-flighted to another hospital for further treatment.

Later that month, Dr. Leezer spoke with NGMC's practice administrator, Angie Smith, about sending an incident report to TDC, their medical malpractice insurance carrier at the time, regarding the emergency delivery. Dr. Leezer did not talk to Smith about Holderfield's care prior to Holderfield's admission to the hospital. Smith sent the following email to SSP:

> Please find attached the medical records for a patient of ours that Dr[.] Leezer recently delivered. There were some complications and now the patient has requested her records. Dr[.] Leezer fears this might turn into a lawsuit even though she saved her life. The patient had uncontrolled diabetes during her pregnancy. She was referred to diabetes counseling but due to Covid 19 the diabetes clinic at Floyd was closed. The uncontrolled diabetes led to complications with her delivery.

SSP, in turn, sent the following email to TDC:

> Subject: Incident report/Kristen Leezer, MD; Northwest Georgia Medical Clinic/ Policy No. 0966757
>
> . . .

4

Sarah, I'm reporting this as an incident only. Attached are the medical records and below is a description of the event. Please confirm receipt and let me know if you have any questions.

Incident Date:     6/13/2020
Patient:             Kayla Holderfield
Insured:            Dr. Kristen Leezer
Description:   Insured delivered patient's 4 lbs., 15 oz female via [C]-section with complications, including uncontrolled diabetes during pregnancy. She was referred to diabetes counseling but due to Covid 19 the diabetes clinic at Floyd was closed. The uncontrolled diabetes led to complications with her delivery. Patient has requested her records. Insured concerned this could turn into a lawsuit but believes her care was appropriate.

Drs. Freeman and Blake did not contact SSP or TDC regarding their care of Holderfield. Based on SSP's email, TDC opened a file for Dr. Leezer and NGMC.

Holderfield filed her medical malpractice action against NGMC and Drs. Freeman and Blake in February 2022. By that time, NGMC and its doctors, including Drs. Freeman and Blake, were insured by Medical Mutual. TDC denied coverage on the ground that Holderfield's claims against Drs. Freeman and Blake were not reported during their coverage period. TDC noted that the only doctor identified by the email was Dr. Leezer, and while the email included over 200 pages of medical

records, which reflected the care by the other doctors as well, there was no indication in the email that the notice was provided for anyone other than Dr. Leezer. Medical Mutual also denied coverage to Drs. Freeman and Blake. Medical Mutual concluded that Dr. Leezer's report was a claim within the meaning of its policy and its policy only provides coverage for claims that are first made and reported during its policy period. Additionally, Medical Mutual asserted that there was no coverage for Drs. Freeman and Blake because certain exclusion terms applied.

Ultimately, TDC provided coverage for NGMC and provided a courtesy defense for Drs. Freeman and Blake. The doctors agreed to a consent judgment and assigned their claims against TDC, Medical Mutual, and SSP related to "the [i]nsurers' acts or omissions regarding coverage, defense[,] and indemnity under the TDC policy or the Medical Mutual [p]olicy" to Holderfield. Holderfield then filed suit against TDC, Medical Mutual, and SSP, alleging the insurers wrongfully denied coverage and abandoned their insureds. The parties filed cross-motions for summary judgment regarding whether either insurer was required to provide coverage, and the trial court concluded that the doctors were not covered under either policy.

*Case No. A25A0990*

1. SSP claims the trial court erred in denying its motion for partial summary judgment against TDC. In support of its argument, SSP claims that TDC's insurance policy was ambiguous as to the reporting requirements. Finding no such ambiguity, we affirm.

The TDC policy is a claims-made policy. As such, and per the terms of the policy, this means that the policy applies only "to liability for only those claims that are first reported in writing to the Company while the policy is in force." The policy provided that "*Claims* are covered under this Policy only if and when . . . **We** receive a *Claim Report* with respect to such *Claim* during the *Policy Period*."[2] (Emphasis in original.) The policy also notes that if TDC receives a "Claim Report" from one named insured "this Policy will not apply on behalf of any other *Named Insured* unless **we** also receive a *Claim Report* from such other *Named Insured* during this *Policy Period*." (Emphasis in original.)

The policy defines the term "Claim Report" as "**your** written communication received at **our** offices that notifies **us** of: (1) **Your** receipt of a *Claim*; or (2) **Your** awareness of a *Probable Claim Event* and for which **you** provide all of the information

---

[2] The policy provides that the words "we," "us" and "our" refer to TDC and "you" and "your" refer to each applicable insured under the policy.

described in . . . **Your** Duties in the Event of a *Claim* or *Probable Claim Event*." (Emphasis in original.) The agreement required the insured to provide the following information in light of a "Probable Claim Event": "the date, time, place, parties involved, identity of the injured party or parties, identities of all witnesses, and all other relevant facts that might assist **us**." (Emphasis in original.) The policy also reiterates that "[a] report to **us** of a *Claim* or *Probable Claim Event* by or on behalf of one or more Insureds is not a report by or on behalf of any other Insured. (Emphasis in original.)

"Construction and interpretation of an insurance policy are matters of law for the court. An insurance policy is a contract and subject to the ordinary rules of contract construction[.]" (Citation and punctuation omitted.) *Stankovich v. Axis Ins. Co.*, 365 Ga. App. 877, 879 (880 SE2d 366) (2022).

> We are fully aware of the rule of construction that requires ambiguities in an insurance policy to be construed in favor of the insured and against the insurer who wrote the policy. But an equally valid rule is that an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured.

(Citation and punctuation omitted.) *Serrmi Products v. Ins. Co. of Pennsylvania,* 201 Ga. App. 414, 415 (411 SE2d 305) (1991).

Here, SSP argues that the terms "Claim Report" and "written communication" are too broad and undefined and leave the intent of the parties in question. SSP notes that the policy does not specify what a "Claim Report" consists of and is silent as to whether medical records attached to and incorporated by reference to an email are part of the same "Claim Report". Under SSP's construction, Drs. Blake and Freeman satisfied their obligation to submit a "Claim Report" during the policy period because the "Claim Report" noted Holderfield's uncontrolled diabetes and the attached medical records identified both doctors by name and showed their involvement in the management of her uncontrolled diabetes.

We are unpersuaded that the terms of the policy are ambiguous. Viewing the policy as a whole and giving a reasonable, unstrained interpretation of these terms, we conclude that "Claim Report" and "written communication" are not susceptible of more than one meaning. As noted above, the "Claim Report" term simply requires a written communication that demonstrates the insured's awareness of a "Probable Claim Event" and requires the insured to provide certain details regarding the event.

9

SSP does not meaningfully suggest these words can be afforded any other reasonable interpretation, and therefore the words are not ambiguous. See *Serrmi*, 201 Ga. App. at 415. Moreover, SSP's contention that Drs. Freeman and Blake are covered under the policy as their names appear in the medical records included in Dr. Leezer's report is belied by the fact that the policy cautions in at least two places that the report of one insured is not a report on behalf of any other insured. Therefore, SSP's construction is not supported by the plain language of the contract, and this Court is not permitted to rewrite and ignore terms. See *Bearoff v. Craton*, 350 Ga. App. 826, 834 (1) (830 SE2d 362) (2019) ("[I]t is the function of the court to construe the contract as written and not to make a new contract for the parties.") (citation and punctuation omitted).

Despite the unambiguous plain language of the contract, SSP points to evidence regarding the conduct of the parties to support its construction.[3] Because we find that the policy's terms are unambiguous, such parol evidence is inadmissable. See *Premier Pediatric Providers v. Kennesaw Pediatrics*, 373 Ga. App. 741, 747 (2) (b) (908 SE2d 368) (2024). Moreover, even if we could consider such evidence, it would not change our conclusion. While it may be true that, under certain circumstances, parties may

---

[3] For example, SSP's appellate brief admits in judicio that TDC accepted the report on behalf of NGMC when only Dr. Leezer was listed as the named insured.

modify a contract through course of conduct, see *Hanham v. Access Mgmt. Group*, 305 Ga. 414, 417 (3) (825 SE2d 217) (2019), SSP does not characterize this argument as one for contract modification, nor did it argue contract modification to the trial court. Pretermitting any possible merit to a modification argument, this Court will not reverse a grant of summary judgment as "wrong for any reason." *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293-294 (1) (701 SE2d 915) (2010).

Furthermore, we find that even if the express provisions requiring each insured to submit their own "Claim Report" somehow did not apply to the facts presented by this case, the inclusion of the doctors' names and acts in the medical records alone cannot satisfy the specific notice requirements required by a claims-made policy. The Eleventh Circuit Court of Appeals, applying Georgia law, addressed a similar issue in *Resolution Trust Corp. v. Artley*, 24 F3d 1363 (11th Cir. 1994). In *Resolution Trust*, a bank sued its former officers and directors, who filed complaints against an insurer seeking coverage under their respective claims-made policies. Id. at 1365 (I) (A). During the policy period, the bank sent certain financial documents to the insurer documenting the bank's declining financial strength, poor lending practices, and mismanagement, but did not divulge any specific wrongful acts. Id. at 1368 (II) (B).

The Eleventh Circuit concluded that simply providing documentation without pointing to a negligent act did not satisfy a claims-made policy notice requirement. See id. ("[S]uch a view would lead to the perverse situation in which [doctors] would be better served to disguise potential claims [in medical records] so that they would be covered by insurance well into the future while not drawing attention to conduct that might increase future premiums, or terminate coverage altogether.") (citation and punctuation omitted).

We find such reasoning persuasive. Presuming that the policy authorized multiple insureds to submit a single "Claim Report", the references to Drs. Freeman and Blake in the medical records attached to Dr. Leezer's "Claim Report" could not satisfy a notice requirement under the meaning of the policy unless the report named those doctors and reported their conduct that could be a "Probable Claim Event". As the subject line and email body of the "Claim Report" only reference Dr. Leezer and NGMC, and the incident date only discusses Dr. Leezer's conduct, the trial court correctly held that the "Claim Report" did not satisfy the notice requirement for Drs. Freeman and Blake.

Therefore, there was no error in denying SSP's motion for partial summary judgment as TDC owed no duty to provide coverage for Drs. Freeman and Blake as a matter of law.

*Case No. A25A0991*

2. Holderfield, like SSP above, claims that the trial court erred in concluding that TDC did not owe coverage to Drs. Freeman and Blake. Specifically, she asserts that (i) Dr. Leezer's report provided adequate notice for the other doctors under the policy, (ii) TDC had a requirement to read the medical records to discover the other doctors' negligent acts, and (iii) because those doctors' acts were in the medical records, Drs. Freeman and Blake were not required to issue separate reports. For the same reasons given in Case No. A25A0990, these arguments fail, and we conclude that the trial court did not err in granting TDC's motion for summary judgment.

3. Holderfield also argues that the trial court erred by granting summary judgment to Medical Mutual. She asserts that the trial court erred in concluding that Dr. Leezer's report precluded coverage for Drs. Freeman and Blake under the Medical Mutual policy because, according to her, the Medical Mutual policy provided each insured with separate coverages. Alternatively, she argues that the terms

13

"Claim" and "Medical Incident" are ambiguous and must be construed in her favor to provide coverage.

Like the TDC policy, the Medical Mutual policy is a claims-made policy. Under the policy, nine doctors, including Drs. Freeman and Blake were provided their own coverage and had their own premium amount, though NGMC was the named insured. With regard to coverage, the policy provides that:

> The Company will pay, on behalf of the **Insured** . . . all damages that the **Insured** becomes legally obligated to pay, up to the applicable Limits of Liability, for an **Injury** to which this insurance applies:
> (i)  because of a **Claim** alleged to have resulted from a **Medical Incident** that takes place on or after the Retroactive Date . . . and before the end of the **Policy Period**;
> (ii)  and which **Claim** was first made and reported either during the **Policy Period**, or during any applicable Extended Reporting   Period.

(Emphasis in original). The policy provides the following definition for "Claim":

> **"Claim"** means, and is considered to be, first made against an **Insured** upon the earliest of:
> > (i)   an **Insured** having knowledge of a **Medical Incident** that by its nature may result in a demand or request for payment of damages or for services to which this insurance applies; or
> > (ii)   an **Insured** receiving a notice of a demand for money, for

14

services, or any other notice indicating that a **Claim** may be    m a d e because of a **Medical Incident**; or

> (iii)    an **Insured** receiving notice of a threatened or filed **Legal Action** alleged to have resulted from a **Medical Incident**.

All **Claims** arising out of or in connection with the same **Medical Incident** shall be deemed to have been made at the time the first **Claim** is made.

(Emphasis in original.)

The policy goes on to define the term "Medical Incident" as "an act, error, or omission, or series of related acts, errors or omissions, arising out of or in connection with the rendering of or failure to render **Professional Services**. A continuing course of treatment of a patient shall be considered one **Medical Incident**."(Emphasis in original.)

The Medical Mutual policy was also subject to numerous exclusions, including any

> act, error, or omission by an **Insured** prior to the effective date of this policy if:
>
> (i)    an **Insured** knew or should have known of a **Medical Incident** that by its nature may result in a **Claim**; or
>
> (ii)    a **Claim** or **Legal Action** arising out of, or in connection with, the same **Medical Incident**, was reported to any "Other Insurance;"

or

(iii)    a **Medical Incident** giving rise to a **Claim** has been reported to "Other Insurance."

(Emphasis in original.)

(a) Holderfield first contends that the trial court erred in concluding that Dr. Leezer's report to TDC was the first "Claim" under the Medical Mutual policy. She argues that under the terms of the policy, there were ten separate policies in place and each individually-insured doctor had his or her own rights and responsibilities, thus Dr. Leezer could not affect the coverage of the other doctors. Holderfield offers an illustrative revision of the policy to support her construction. She argues the term "Claim" should be read as follows:

> "Claim" means, and is considered to be first made against ~~an Insured~~ [Dr. Blake] upon the earliest of (i) ~~an Insured~~ [Dr. Blake] having knowledge of a Medical incident that, by its nature may result in a demand . . .

Under such a construction, Drs. Freeman and Blake were the only insureds under their policies. She concludes that since neither Dr. Freeman nor Dr. Blake made a "Claim" until the Medical Mutual policy period, the trial court erred in concluding

16

there was no coverage under the policy. We do not agree that the insurance contract created separate obligations for each insured.

Despite Holderfield's invitation, "[n]either the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it." *Fernandes v. Manugistics Atlanta, Inc.*, 261 Ga. App. 429, 433 (1) (582 SE2d 499) (2003). Instead, we must construe an insurance contract according to the entirety of its terms as set forth in the policy. *Crafter v. State Farm Ins. Co.*, 251 Ga. App. 642, 644 (554 SE2d 571) (2001); OCGA § 33-24-16. While this Court will look for the intent of the parties when enforcing a contract, we "also presume that the intent is reflected in the contractual language." *Bearoff*, 350 Ga. App. at 834 (1); see also *Brown v. Ohio Cas. Ins. Co.*, 239 Ga. App. 251, 254 (2) (519 SE2d 726) (1999) ("We look to the language of the contract to determine the intent of the parties.").

Here, Holderfield replaces the phrase "an Insured" with "Dr. Blake" to illustrate her view that the several doctors had separate policies with their own obligations. "We have previously held[, however,] that the phrase 'an insured' creates a joint obligation between co-insureds." *Brown*, 239 Ga. App. at 254 (2). The Medical Mutual policy is replete with references to "an Insured" when discussing all of the

insureds collectively, and the policy uses the phrase "the Insured" when specifically referencing a single insured. For example, when discussing coverage under each insured's policy, the agreement notes Medical Mutual will pay "on behalf of the **Insured** . . . damages that the **Insured** becomes legally obligated to pay[.]" (Emphasis in original.) The policy, however, excludes coverage for acts, errors, and omissions by "an **Insured** . . . [if] an **Insured** knew or should have known" an incident would result in a "Claim". (Emphasis in original.) Additionally, the policy includes several examples where the same sentence refers to "an insured" to describe the insureds collectively and "the insured" to describe an individual insured. Regarding the duty to defend, the policy provides such an example: "The Company's duty to defend an **Insured** ends when the **Insured's** applicable Limits of Liability have been exhausted[.]" (Emphasis in the original.) Thus, we find that any use of "an insured" in the Medical Mutual policy was intended to create a joint obligation among the insureds. *Brown*, 239 Ga. App. at 254 (2)[4].

---

[4] We note that the dissent would not have reached this question. As discussed below, however, we conclude that fact issues remain in this case regarding insurance coverage. The question of law as to whether the policy created joint obligations was properly raised before the trial court, and we have reached this issue to assist the finder of fact in resolving remaining fact questions.

(b) Our conclusion regarding certain joint obligations among the insureds does not end our inquiry, however, as Holderfield also asserts that the terms "Claim" and "Medical Incident" are ambiguous. We agree.

> Contract interpretation is guided by three steps: First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation and punctuation omitted.) *Premier Pediatric*, 373 Ga. App. at 746 (2) (a). Where a term of a policy of insurance is susceptible of two or more meanings, even when such multiple constructions are all logical and reasonable, the term is ambiguous. *Blue Ridge Auto Auction v. Acceptance Indem. Ins. Co.*, 343 Ga. App. 319, 320 (2) (807 SE2d 51) (2017).[5]

---

[5] Medical Mutual asserts that Holderfield did not preserve as error her contention that the term "Medical Incident" is ambiguous. Despite its contention, Holderfield's motion for summary judgment against Medical Mutual argues that the term "Claim" is ambiguous, and, as shown below, whether that term is susceptible of one or more meaning, as Holderfield argues now and argued below, requires determining whether the definition for "Medical Incident" is susceptible of one or

In cases of ambiguity, there are three well-known rules of contract construction that apply: (1) ambiguities are strictly construed against the insurer as the drafter; (2) exclusions from coverage the insurer seeks to invoke are strictly construed; and (3) the contract is to be read in accordance with the reasonable expectations of the insured when possible.

Id. Thus, where a term of an insurance contract is ambiguous, even when multiple constructions are all logical and reasonable, "such term will be strictly construed against the insurer as drafter and in favor of the insureds. Id. at 321 (2).

First, the definition of "Medical Incident" does not refer to the insureds, either singularly or collectively, instead simply referencing the act of rendering or failing to render professional services. The definition also notes that a continuing course of treatment of a patient shall be considered one "Medical Incident," but does not note whether that course of treatment includes one insured or all of the insureds collectively. As such, the definition of "Medical Incident" does not specify whether it applies to one or all of the insured's professional services, and does not specify whether or not a continuing course of treatment refers to the treatment by one provider or any treating doctor collectively. Medical Mutual does not point to any more meaning. Accordingly, we find this issue is preserved.

20

other term in the insurance policy that clears up the ambiguity. Secondly, because the term "Claim" incorporates this definition of "Medical Incident," the term "Claim" could mean either that (1) a "Claim" is made when any of the insureds is aware of his or her own acts or inactions that may lead to a "Claim" under the policy, or (2) a "Claim" is made when any of the insureds is aware of any other insured's acts or omissions that may lead to a "Claim" under the policy.

Because the terms "Claim" and "Medical Incident" are susceptible of more than one meaning, we must construe these terms in favor of Holderfield and against Medical Mutual, and accept the first construction. *Blue Ridge Auto Auction*, 343 Ga. App. 320-321 (2). With these terms properly construed, we conclude that Dr. Leezer's notice reflected her awareness that her acts may lead to a "Claim" and her report was only a "Claim" related to her own professional services. Thus, contrary to the trial court's conclusion, Dr. Leezer's notice to TDC was not the first notice of a "Claim" for either Drs. Blake or Freeman.

(c) To the extent Medical Mutual argues that Drs. Blake and Freeman reasonably had knowledge of a "Medical Incident," either to show that a "Claim" was first made outside of the policy period or to satisfy the policy exclusion that they

knew or should have known of an incident that by its very nature may result in a "Claim", such questions are for a jury. This Court has found "in most cases, reasonableness of a failure to give notice is a question for the trier of fact." See *Joseph*, 356 Ga. App. at 185-186 (2) (b) ("[W]e cannot conclude as a matter of law that the insureds could have reasonably expected these incidents to be the basis of [a] claim."). Because the trier of fact must determine whether Drs. Freeman and Blake had reasonable knowledge of a potential "Claim" by Holderfield, this is not an issue for the trial court or this Court to decide summarily. See id.

We note that the dissent would find that there is insufficient evidence that, before the Medical Mutual policy went into effect, Drs. Blake and Freeman knew of a potential Claim. Our review of the record, however, shows evidence that Dr. Freeman was aware that Holderfield had abnormal and significantly elevated glucose levels; Dr. Blake did not review the results despite knowing a glucose screen was performed; Drs. Freeman and Blake did not prescribe Holderfield with insulin even though her urine tested positive for glucose during her appointments with both doctors; and NGMC has weekly meetings where the doctors share incidents that have

occurred recently and Dr. Leezer deposed that she"would have brought up the story of what happened" to Holderfield at the hospital.

Pursuant to the Medical Mutual policy exclusions, the policy does not cover any act, error or omission by Drs. Blake or Freeman prior its effective date if they "knew *or should have known*" of a Medical Incident that, by its nature, may result in a Claim. (Emphasis supplied). The dissent contends that Medical Mutual, as the party opposing summary judgment, has not provided any evidence that Drs. Blake and Freeman had knowledge of a potential Claim that is sufficient to create a genuine issue of material fact. Pursuant to the policy terms, however, Medical Mutual need only provide slight evidence that the doctors should have known of a potential Claim. See *Albright v. Terminal Inv. Corp.*, 373 Ga. App. 798, 799 (909 SE2d 672) (2024) ("To defeat a motion for summary judgment the respondent does not have to present conclusive proof to rebut the movant's evidence; if the respondent produces or points to any specific evidence, even slight, in the record giving rise to a triable issue of material fact, then summary judgment must be denied.") (citation and punctuation omitted). Moreover, "all reasonable conclusions and *inferences* drawn from the evidence are to be construed in the light most favorable to the nonmovant." (Citation

23

and punctuation omitted). *Giddens v. Med. Ctr. of Cent. Ga.*, 353 Ga. App. 594, 600 (1) (839 SE2d 31) (2020). We conclude that, in the light most favorable to Medical Mutual, and construing all reasonable inferences in its favor, the above evidence is sufficient to create a genuine dispute as to whether Drs. Blake and Freeman should have known of a Medical Incident that by its nature may have resulted in a Claim.

In sum, the trial court correctly concluded that Dr. Leezer's notice to TDC did not cover the other doctors and, therefore, there was no Claim made by the other doctors during the TDC policy period. However, the trial court erred in finding as a matter of law that Dr. Leezer's report to TDC was the first notice of Claim for all three doctors outside the Medical Mutual policy period, and thus erred in finding as a matter of law that Drs. Freeman and Blake were not entitled to coverage under the Medical Mutual Policy. Accordingly, we affirm the trial court's order granting TDC's motion for summary judgment, denying SSP's motion for partial summary judgment, denying Holderfield's motion for partial summary judgment against TDC, and denying Holderfield's motion for partial summary judgment against Medical Mutual

in Case Nos. A25A0990 and A25A0991. We reverse the trial court's order granting Medical Mutual's motion for summary judgment in Case No. A25A0991.

*Judgment affirmed in Case No. A25A0990. Judgment affirmed in part and reversed in part in Case No. A25A0991. Pipkin, J., concurs; and McFadden, P.J., concurs specially in Divisions 1 and 2, and concurs specially in part and dissents in part in Division 3.*

# In the Court of Appeals of Georgia

A25A0990. STERLING SEACREST  PRITCHARD, INC. v. HOLDERFIELD et
    al.
A25A0991. HOLDERFIELD v. MEDICAL MUTUAL INSURANCE COMPANY
    OF NORTH CAROLINA et al.


McFADDEN, Presiding Judge, concurring specially in part and dissenting in part.

I respectfully concur specially in part and dissent in part.

This is an insurance coverage dispute arising out of a medical malpractice claim brought by Kayla Holderfield against Drs. Lisa Blake and Dixon Freeman. At the time they treated Holderfield, Drs. Blake and Freeman were covered by The Doctor's Company ("TDC"). At the time she brought suit, the doctors were covered by

Medical Mutual Insurance Company of North Carolina ("Medical Mutual"). Both insurers denied coverage. These appeals are from the trial court's rulings on cross motions for summary judgment.

The underlying malpractice action has been settled, and the defendant doctors assigned their claims to Holderfield. So the doctors' insurance broker, Sterling Seacrest Pritchard, Inc. ("SSP"), is the appellant in Case No. A25A0990, and Holderfield is the appellant in Case No. A25A0991.

In Divisions 1 and 2, the majority rejects as a matter of law that the claims of SSP and Holderfield that TDC was obligated to provide coverage. (Division 1 addresses Case A25A0990, SSP's claim; Division 2 addresses Case A25A0991, Holderfield's claim.) I agree that TDC is entitled to summary judgment on those claims. But I do not agree with all that the majority says, so I concur specially in Divisions 1 and 2.

Division 3 addresses Case No. A25A0991 as to Holderfield's claim against Medical Mututal. In Division 3, the majority finds that a question of fact exists as to coverage under the policy issued by Medical Mutual that precludes summary judgment to either Medical Mutual or Holderfield. I agree with the majority that

Medical Mutual is not entitled to summary judgment because the policy language governing the issue is ambiguous and that the ambiguity must be resolved in favor of Holderfield. But I would hold that Holderfield is entitled to partial summary judgment, that as a matter of law her claims against Drs. Blake and Freeman are covered under the Medical Mutual policy. So I concur specially in part and dissent in part as to Division 3.

1. *Facts*

I first briefly recap pertinent parts of the factual and procedural chronology. Where necessary, I address the facts in greater detail within the analysis below.

Drs. Blake and Freeman, along with their colleague Dr. Kristen Leezer, were obstetricians with Northwest Georgia Medical Clinic, P. C. ("the practice") and treated Holderfield during her pregnancy. Holderfield alleges that Drs. Blake and Freeman failed to properly treat her gestational diabetes and that the uncontrolled condition caused her to give birth to her child prematurely and caused both mother and child harm.

When they provided care for Holderfield, Drs. Blake and Freeman, along with the practice, were insured by TDC. To obtain coverage under the TDC policy, they

were required to make a claim report — a term defined by the policy — within the period in which the policy was in effect.

Dr. Leezer attended Holderfield during the emergency delivery of her child on June 13, 2020. On July 16, 2020, insurance broker Sterling Seacrest Pritchard, Inc. ("SSP") made what it described as an "incident report" to TDC on behalf of Dr. Leezer. The incident report stated that Holderfield's uncontrolled diabetes had led to complications with her delivery, that Holderfield had requested her medical records, and that she was concerned there might be a lawsuit. (Although Dr. Leezer anticipated a lawsuit, she believed she had provided appropriate care. And indeed, in her appellate brief Holderfield agrees that her care from Dr. Leezer was appropriate.)

In September 2021, after the birth of Holderfield's child, the practice changed to a new insurer, Medical Mutual. The Medical Mutual policy determined coverage based on when a claim was "first made and reported," a term defined by the policy.

On February 24, 2022, Holderfield filed an action for professional and ordinary negligence against Drs. Blake and Freeman, among others, on behalf of herself and her child. Drs. Blake and Freeman then reported a claim involving their care of Holderfield to Medical Mutual.

4

## 2. *Coverage under the TDC policy*

The trial court held that, as a matter of law, that TDC was not obligated to provide coverage to Drs. Blake and Freeman, that the notice of claim initiated by Dr. Leezer did not serve as notice of a claim against them, and that, therefore, they had not met the requirement that they make a claim report within the period in which the TDC policy was in effect. The trial court granted TDC's motion for summary judgment and denied motions for partial summary judgment filed by broker SSP and Holderfield. I agree with the majority that this ruling was correct.

As stated above, the TDC policy required an insured to make a claim report within the period in which the policy was in effect. The policy defined the term "claim report" to mean: "your written communication received at our offices that notifies us of: 1. Your receipt of a Claim; or 2. Your awareness of a Probable Claim Event and for which you provide all of the information described in Section VIII: g. 2. [of the policy]." (Emphasis omitted.) «V2. 108»

The TDC policy also expressly stated, in several places, that each insured must make their own claim report and cannot satisfy the reporting requirement through a claim report submitted by a different insured. To that point, the policy stated: "If we

5

receive a Claim Report during this Policy Period from one Named Insured, this Policy will not apply on behalf of any other Named Insured unless we also receive a Claim Report from such other Named Insured during this Policy Period." (Emphasis omitted.) It also stated: "A report to us of a Claim or Probable Claim Event by or on behalf of one or more Insureds is not a report by or on behalf of any other Insured." (Emphasis omitted.) And it excluded from coverage "[l]iability for any Claim or Probable Claim Event reported to us after the termination of the Policy Period, even if related Claims against different insured were reported to us during the Policy Period." (Emphasis omitted.)

Like the majority, I find the policy terms were unambiguous. They required Drs. Blake and Freeman each to make their own claim report within the period in which the policy was in effect to obtain coverage under the policy. There is no evidence that Drs. Blake and Freeman themselves made any written communication to TDC within the policy period that would constitute a claim report under the terms of the policy. And as the majority notes, SSP's argument that TDC did not always enforce its reporting requirement as written provides no basis for reversal.

3. *Coverage under the Medical Mutual policy*

The trial court held, as a matter of law, that Medical Mutual's policy did not cover Holderfield's claims against Drs. Blake and Freeman because those claims were made before the Medical Mutual policy went into effect. The majority, however, finds that a question of fact exists as to when the claims were "first made and reported," making summary judgment inappropriate for either party. I disagree. I would hold that summary judgment should be entered in favor of Holderfield and against Medical Mutual on the coverage issue.

As stated above, coverage under the Medical Mutual policy turns on whether that policy was in effect when the claims against Drs. Blake and Freeman were "first made and reported." The policy provides that a claim is "first made" against an insured either (1) when "an Insured [has] knowledge of a Medical Incident that by its nature may result in a demand or request for payment of damages . . ." (emphasis omitted); (2) when "an insured receiv[es] a notice of a demand for money, for service, or any other notice indicating that a Claim may be made because of a Medical Incident" (emphasis omitted); or (3) when "an Insured receiv[es] notice of a threatened or filed Legal Action alleged to have resulted from a Medical Incident" (emphasis omitted); whichever occurs earlier.

7

This case concerns the first of those three possibilities. Medical Mutual contends that Drs. Blake and Freeman had "knowledge of a Medical Incident that by its nature may result in a demand or request for payment of damages . . . ." (emphasis omitted) before the Medical Mutual policy went into effect.

Medical Mutual argues that the claim at issue was first made and reported when Dr. Leezer's July 2020 communication was transmitted to TDC. Its argument rests on two premises: that under Georgia law the terms of the Medical Mutual policy created joint reporting obligations among Drs. Blake, Freeman, and Leezer; and that, given those joint obligations, Dr. Leezer's knowledge of the "Medical Incident" in July 2020 meant that the claim was "first made and reported" before the Medical Mutual policy went into effect, thereby depriving Drs. Blake and Freeman of coverage.

In Division 3 (a), the majority agrees with Medical Mutual that the policy created joint obligations among the doctors. But in Division 3 (b) the majority finds that as a matter of law Dr. Leezer's knowledge and actions in July 2020 do not constitute a first-made claim under the policy because the policy language is ambiguous and must be construed in Holderfield's favor. I agree with the majority's

analysis in Division 3 (b) that the policy is ambiguous and that we must attempt to resolve that ambiguity in Holderfield's favor, which in this case means construing the policy such that its coverage does not depend on the timing of Dr. Leezer's knowledge. Consequently, it does not matter if the policy created joint obligations among the doctors, and so I would not reach the issue that the majority addresses in Division 3 (a).

Nevertheless, I dissent to Division 3 (c), in which the majority holds that a jury should consider Medical Mutual's argument that Drs. Blake and Freeman reasonably had knowledge of a "Medical Incident" because, as argued by Medical Mutual in its appellate brief, they "should have treated her for insulin" and "should have looked at the chart."

As the majority explains, there is evidence that Dr. Freeman was aware that Holderfield had abnormal and significantly elevated glucose levels; that Dr. Blake knew a glucose screen had been performed but did not review the results; and that both of them failed to prescribe insulin even though her urine tested positive for glucose during appointments with them. In other words, there is evidence that Drs.

9

Blake and Freeman failed to recognize indications of a problem and so failed to take appropriate action.

But that same evidence is the crux of the underlying malpractice claim. Indeed many, and perhaps most, instances of malpractice can be described as failure to recognize and appropriately address indications of a problem.

So Medical Mutual's argument proves far too much. Its argument would exclude — by implication — a great deal of the coverage its insureds bargain for. See *Serrmi Prods. v. Ins. Co. of Pennsylvania*, 201 Ga. App. 414, 415 (411 SE2d 305) (1991) (reaffirming that "ambiguities in an insurance policy [are] to be construed in favor of the insured and against the insurer who wrote the policy") (citation and punctuation omitted).

To avoid summary judgment in favor of Holderfield, Medical Mutual must point to something more than simply evidence that Drs. Blake and Freeman committed medical malpractice in their treatment of her.

Medical Mutual must point to evidence that, before the Medical Mutual policy went into effect, Drs. Blake and Freeman knew of a potential claim. Drs. Blake and Freeman both testified that they were not aware of the potential claim until

Holderfield filed her lawsuit, and Medical Mutual has not pointed to any evidence disputing the doctors' testimony. See *Keane v. Annice Heygood Trevitt Support Trust*, 285 Ga. App. 155, 156-157 (645 SE2d 641) (2007) ("Once a plaintiff sets forth a prima facie case showing entitlement to summary judgment, the burden shifts to the defendant to present competent evidence establishing a possible defense.") (emphasis omitted). So Holderfield is entitled to partial summary judgment against Medical Mutual.